## SMALLEY v. RIO GRANDE WESTERN RY. CO.

No. 1916. Decided November 7, 1908 (98 Pac. 311).

1. TRIAL—MOTIONS FOR NONSUIT AND DIRECTED VERDICT—EFFECT. In a general sense, motions for nonsuit or for a directed verdict take the place of a demurrer to the evidence, and are governed by the same principles, and like a demurrer, they submit the case for determination on the merits.

2. TRIAL—NONSUIT—POWER TO GRANT. Under Comp. Laws 1907, sections 3181, 3182, authorizing a judgment of nonsuit in specified cases, the court may at the close of plaintiff's evidence on his motion grant a voluntary nonsuit and on defendant's motion an involuntary nonsuit, and the court may do the same thing at the close of all the evidence and before the submission of the case for final determination.

3. JUDGMENT—JUDGMENT ON MERITS—NONSUIT. A voluntary nonsuit granted on plaintiff's motion, either at the close of his evidence, or at the close of all the evidence or an involuntary nonsuit, granted on defendant's motion before the submission of the case for final determination, is not on the merits.

4. JUDGMENT—RES JUDICATA—DIRECTION OF VERDICT. Where both parties rest, they indicate a desire for submission of the case for final determination, and where the facts are in dispute, the case must be submitted to the jury, and where the facts are not in dispute, the determination presents a question of law for the court on whose decision a judgment, like the judgment on the verdict, is on the merits.

5. TRIAL—SUBMISSION OF CASE ON MERITS. On a final submission of the case, where there is no evidence to sustain the case of the party having the affirmative, it is proper to direct a verdict against him, and it is as proper to direct a verdict against plaintiff, in the absence of proof establishing a

fact essential to his case, as to direct a verdict against him when the proof, either on his own evidence or that of defend-ant, conclusively establishes an affirmative defense.

6. JUDGMENT—SUBMISSION OF CASE ON MERITS. Under Comp. Laws 1907, sections 3181, 3182, authorizing a nonsuit in enumerated cases, and providing that in every other case judgment must be on the merits, the court, on the submission of the case at the close of the evidence with plaintiff urging that the facts are in dispute, and that the question is for the jury, and with defendant urging that the facts are not in dispute, and that on the facts he, as a matter of law, is entitled to judgment, may direct a verdict for defendant, and the judgment thereon may be on the merits.

7. TRIAL—NONSUIT—GROUNDS. The particular grounds on which a motion for nonsuit is based must be stated, so that the attention of the court and counsel may be called thereto, and the defects in the proof corrected if they admit of correction.[1]

8. TRIAL—DIRECTION OF VERDICT—GROUNDS. The rule requiring the specification of the grounds on which a motion for a nonsuit is based applies to a motion for a directed verdict and the grounds therefor must be specified.

9. TRIAL—DIRECTION OF VERDICT—GROUNDS. Where, in an action for negligence, the answers put in issue the allegations of the complaint, and set forth affirmative defenses of contributory negligence, assumption of risk, and settlement, etc., the court in directing a verdict for defendant must specify the grounds therefor, or otherwise there is no means of knowing whether the direction is made on the ground that the evidence does not show negligence, or on the ground that the evidence establishes one or more of the affirmative defenses.

10. TRIAL—DIRECTION OF VERDICT—GROUNDS. The rule that a motion to direct a verdict, and the judge in making the direction, must specify the particular grounds justifying it does not require the movant or the court to state the reasons supporting the grounds; and, where the grounds are sufficiently specific to call attention to the particular defects and the question of law, the law is satisfied.

11. TRIAL—DIRECTION OF VERDICT—GROUNDS. A mere general statement that under the evidence plaintiff is not entitled to recover, or that defendant is entitled to a verdict, or that plain-

---

[1] Frank v. Bullion-Beck Mfg. Co., 19 Utah 35, 56 Pac. 419; Skeen v. O. S. L. R. Co., 22 Utah 413, 62 Pac. 1020; Lewis v. Mining Co., 22 Utah 51, 61 Pac. 860; Wild v. Union Pac. Ry. Co., 23 Utah 266, 63 Pac. 886.

tiff has not made a sufficient case to go to the jury, does not specify any grounds for the direction of a verdict for defendant.

12. TRIAL—DIRECTION OF VERDICT—GROUNDS. In a negligence case, a specification in the direction for a verdict that the evidence is insufficient to show negligence of defendant, or that under the evidence plaintiff is guilty of contributory negligence, or that he assumed the risk, is ordinarily sufficient.

13. TRIAL—DIRECTION OF VERDICT—GROUNDS. The rule that a motion for a directed verdict and the direction must specify the particular grounds is qualified to the extent that, where it is made manifest on what question of law the case was taken from the jury, and the defects on which it was based do not admit of correction, a failure to specify grounds does not justify a reversal.

14. TRIAL—INSTRUCTIONS—"REQUEST TO DIRECT VERDICT." A request to direct a verdict is not a request to charge, but is a motion to take the case from the jury, and the jury must render the verdict directed, and there is no occasion to charge as to the law.

15. TRIAL—DIRECTION OF VERDICT—GROUNDS—SPECIFICATIONS—SUFFICIENCY. In a negligence case, defendant at the close of the evidence asked for a directed verdict because of "no cause of action." Plaintiff stated that the question whether the employees of defendant exercised due care was one of fact, and urged that the evidence was conflicting on an issue. The jury was excluded, and the matter of the conflict was discussed, together with the issue of the negligence of the employees. At the close of the discussion, the court stated that the evidence wihout dispute showed a fact defeating a recovery. The jury was recalled, and directed to return a verdict for defendant. Held that the question of law on which the verdict was directed was indicated so that the defects, if curable, could be cured.

16. NEGLIGENCE—CARE OF PREMISES. As a general rule, no duty is imposed on the owner of premises to keep them in a safe condition for the visits of those who, without license or invitation, may come on them for their own convenience or mere pleasure, or who otherwise enter as trespassers.

17. NEGLIGENCE—CARE OF PREMISES. As a general rule, one inducing or inviting another to come on his premises must use ordinary care to avoid injuring him.

18. NEGLIGENCE—CARE OF PREMISES. One maintaining on his premises a dangerous and attractive appliance, under circumstances naturally attractive to children, and inducing them to believe that they may enter and play, impliedly invites the children

to enter on his premises, requiring him to use ordinary care to protect them from injury.[1]

19. NEGLIGENCE—CARE OF PREMISES. The doctrine that one maintaining on his premises a dangerous and attractive appliance must take reasonable precautions to prevent injury to children induced to come on the premises thereby is not generally applied to attractions arising from the ordinary conduct of a business, or from the mere operation of a machine in the usual manner, but is generally applied to a machine or thing at rest and left unguarded under circumstances where children are exposed to danger by their meddling with it.

20. NEGLIGENCE—DUTY TO USE CARE. Every case of actionable negligence involves a duty to use care and a breach of duty resulting in injury.

21. NEGLIGENCE—DUTY TO USE CARE. Whether in a given case a duty to use care was imposed on one charged with negligence is ordinarily a question of law.

22. RAILROADS—PEDESTRIANS ON TRACK—DUTY TO PROTECT. A railroad company, as a matter of law, owes a duty to those who are rightfully about its premises, or who are there with its express or implied invitation to use care, but it ordinarily owes no no such duty to one who is wrongfully on the premises.

23. RAILROADS—PEDESTRIAN ON TRACK—DUTY TO PROTECT. Employees operating cars in a railroad yard are under no duty to use care towards a person intruding, without authority, on the premises, until his presence is discovered.

24. RAILROADS—PEDESTRIANS ON TRACK—DUTY TO PROTECT. Where the people of a neighborhood have, for a considerable time, habitually traversed railroad premises without objection, the employees operating cars must take notice of such fact, and regulate their conduct accordingly.

25. RAILROADS—PEDESTRIANS ON TRACK—DUTY TO PROTECT. Where children frequently visiting a railroad yard were each time ordered out and made to leave, the visits of the children were not acquiesced in, and the employees in charge of cars did not owe the duty of exercising care in handling cars in the yard until children were discovered.

26. RAILROADS—PEDESTRIANS ON TRACK—DUTY TO PROTECT. While an adult trespasser on railroad premises may be expected to take care of himself and keep out of danger, and the employees operating cars may regulate their conduct on such assumption until

---

[1] Brown v. Salt Lake City, 33 Utah 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619.

it is apparent that he is not aware of the peril, yet, when a child of tender years is discovered about the premises, the employees may not act on the assumption that it will take care of itself, but they must exercise care commensurate with the situation to avoid injury.

27. RAILROADS—PEDESTRIANS ON TRACK—DUTY TO PROTECT. Employees operating cars in a railroad yard removed trespassing children therefrom. In a few minutes the children, without observation of the employees, again entered the yard, and stood watching a car slowly approaching them. When it reached them, they, without knowledge of the employees took hold of it, and attempted to board it, and one of the children was injured. *Held,* that the railroad company was, as a matter of law, not liable.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by Albert Smalley, an infant, by John Smalley, his guardian ad litem, against the Rio Grande Western Railway Company. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Agee, Chez & McCracken* for appellant.

*Sutherland, Van Cott, Allison & Riter* for appellee.

APPELLANT'S POINTS.

By the overwhelming weight of modern authority any negligence on the part of the parents of appellant or Mrs. Lowe, in whose charge he was at the time of his injury, if proven, is not imputable to appellant, and therefore it was error for the court to overrule appellant's objection to questions asked the witness Smalley on cross-examination, which were immaterial for any purpose except to make it appear to the jury that the parents of appellant had been negligent. The doctrine of *Thoroughgood* v. *Bryan,* 8 C. B. 115, the leading case in England, announcing the doctrine of imputed negli-

gence has been generally denied in this country and entirely overthrown and repudiated in England. (See note to *Schultz v. Railway Co.,* 8 L. R. A. [N. S.] 587 et seq.; *Miller v. Railroad,* 128 Ind. 97, 27 N. E. 339; *Nisbet v. Garner,* 75 Ia. 314, 39 N. W. 516; *Whitman v. Fisher,* 98 Me. 577, 57 Atl. 895; *Railroad v. Dougherty,* 209 Ill. 241, 70 N. E. 586; *Mattson v. Railroad* [Minn.], 104 N. W. 443; *Railroad v. Calhoun* [Okla.], 89 Pac. 207; *Schindler v. Railway,* 87 Mich. 400, 49 N. W. 670; *Huff v. Ames,* 16 Neb. 139, 19 N. W. 623; *Kowolski v. Railroad,* 84 Fed. 566, 43 C. C. A. 1; *Railroad v. Schuster,* 113 Pa. 412, 6 Atl. 269; *Roth v. Union Depot Co.* [Wash.], 43 Pac. 641; *Railway v. Wilcox,* 138 Ill. 370, 27 N. E. 899; *Boehm v. Detroit* [Mich.], 104 N. W. 626; *Gunn v. Railroad,* 42 W. Va. 676, 26 S. E. 546; *Railroad v. Lapsley,* 2 C. C. 149.)

The amendment would merely have made the complaint conform more specifically to the facts proven by evidence admitted without objection, and which was undisputed and came from respondent's own witness. Such an amendment was in furtherance of justice and should have been permitted. (*Walton v. Jones,* 7 Utah 462; *Jones v. Ogden City* [Utah], 89 Pac. 1006; *Minneapolis, etc., Co. v. Currey* [Kan.], 89 Pac. 688; *Hobbs v. Ray,* 29 Ky. L. Rep. 999, 96 S. W. 589; *Mining Co. v. Mining Co.,* 29 Utah 490.)

Since the trial, in the case of *Brown v. Salt Lake City,* not yet reported, this court has announced its approval of the doctrine of the turntable cases, and that this doctrine is applicable to "structures and things other than machinery when such structures and things are in themselves dangerous and alluring or attractive to children of immature judgment and discretion, and if, therefore, the owner places something upon his premises which is easily accessible to children, and which is alluring or attractive to their childish propensities and excites their curiosity and desire to play, it, in effect, amounts to an implied invitation to them to come upon the premises." (*Pekin v. McMahon,* 154 Ill. 141, 29 N. E. 484, and *Price v. Water Co.* 58 Kan. 551, 50 Pac. 450; *Penso v. McCormick* [Ind.], 25 N. E. 156, 9 L. R. A. 313; *Powers*

*v. Harlow*, 53 Mich. 514, 19 N. W. 257; *Kopplekum v. Pipe Co.* [Colo.], 64 Pac. 1047; *Tramway Co. v. Nicholas* [Colo.], 84 Pac. 813; *Birge v. Gardner*, 19 Conn. 507; *Branson v. Labrot*, 81 Ky. 638, 50 Am. Rep. 193; *Brinkley, etc., Co. v. Cooper* [Ark.], 31 S. W. 154; *Biggs v. Barbwire Co.* [Kan.], 50 Pac. 4, 44 L. R. A. 655; *O'Leary v. Telephone Co.* [Mich.], 109 N. W. 434.)

If appellant had been injured while attempting to cross the track, or even while playing on or lying asleep on the track, by a car being switched down the track unaccompanied and uncontrolled and without any precautions being taken to ascertain if any child was on or about the track in a place of danger, it would hardly be contended that respondent was not liable, in view of the many decisions holding railroad companies liable under such circumstances. (*Hyde v. Railroad*, 7 Utah 356; *Young v. Clark*, 16 Utah 42, 50 Pac. 832; *Corbett v. Railroad*, 25 Utah 449; *Gunn v. Railroad*, 42 W. Va. 676, 36 L. R. A. 575; *Lange v. Railroad* [Mo.], 91 S. W. 989; *Eppstein v. Railroad* [Mo.], 94 S. W. 967; *Roth v. Union Depot Co.* [Wash.], 43 Pac. 641; *Shelby's Admr. v. Railway* [Ky.], 3 S. W. 157.)

RESPONDENT'S POINTS.

The admission of evidence tending to show negligence on the part of appellant's parents was wholly immaterial, and harmless. It is elementary that error without prejudice is no ground for reversal. (Rev. Stat. 1898, secs. 3008, 3285; *Snell v. Crowe*, 3 Utah 26; *Rogers v. Railroad*, 90 Pac. 1075; *Chambers v. Emery*, 13 Utah 405; *Western, etc., Soc. v. Desky*, 24 Utah 347; *Jenkins v. Mammoth Mg. Co.*, 24 Utah 513; *Garr v. Cranney*, 25 Utah 193; *Holland v. Railroad*, 26 Utah 209; *Freed, etc., Co. v. Sorenson*, 28 Utah 419.)

And if the errors committed could not have changed the result, the judgment of the court below must be affirmed. (*Chambers v. Emery*, 13 Utah 405; *Wolcott v. Smith*, 15 Gray 537; *Coal Co. v. Kelly*, 156 Ill. 9; *Hinds v. Keith*, 57

Fed. 10; *Harrison v. Parmer,* 76 Ala. 157; 2 Ency. Pl. & Pr., 500-505 and numerous cases cited in notes.)

Another way of stating the rule is that if, upon consideration of the whole record, the judgment of the trial court is plainly right, an appellate court will not reverse the judgment for errors of law which did not affect the merits. (*Brown v. Keach,* 24 Conn. 73; *Bothwell v. Millikan,* 104 Ind. 162, 3 N. E. 816; *State v. Finney,* 125 Ind. 427, 25 N. E. 544; *Dunne v. Deery,* 40 Iowa 251; *Jeffres v. Cashman,* 42 Neb. 594, 60 N. W. 895; *Harman v. Kelley,* 14 Ohio 502, 45 Am. Dec. 552; *Sherburne v. Rodman,* 51 Wis. 474; *Maynard v. Locomotive, etc., Assn.,* 16 Utah 150; *Chambers v. Emery,* 13 Utah 405.)

A judgment for respondent will not be reversed for errors of law where appellant was not entitled to recover in any event. (*McCreery v. Wells,* 94 Cal. 485; *Nevitt v. Crow,* 29 Pac. 749; *Ice v. Ball,* 102 Ind. 42, 1 N. E. 66; *Wetmore v. Mellinger,* 64 Iowa 741, 18 N. W. 870; *Parker v. Fields,* 48 Mich. 250; *St. John v. Swanback,* 39 Neb. 841, 58 N. W. 288; *Maynard v. Locomotive, etc., Assn.,* 16 Utah 150.)

Where appellant's evidence shows that he has no right of action, erroneous rulings adverse to him constitute no ground for a reversal. (*Hopkins v. Railroad,* 78 Ill. 32; *Chambers v. Grout,* 63 Iowa 342, 19 N. W. 209; *Richards v. Tozer,* 27 Mich. 451; *Prairie School Tp. v. Hoseleu,* 3 N. D. 328, 55 N. W. 938; *Milford v. La Rue,* 17 Neb. 418, 23 N. W. 8; *Maynard v. Locomotive, etc., Assn.,* 16 Utah 150.)

The burden is always on the appellant to show by the record that the errors complained of worked injury to him. (*Morningstar v. Musser,* 129 Ind. 470, 28 N. E. 1119; *Fulmer v. Fulmer,* 22 Iowa 230; *Spinney v. Bowman,* 10 Atl. 252; *Richards v. Tozer,* 27 Mich. 451; *Newburg v. Farmer,* 1 Wash. T. 182.)

This is equally true when the errors assigned relate to the erroneous admission of evidence; for a judgment will not be reversed for the admission of improper evidence, unless it clearly appears that its admission was injurious to the party objecting. (*Green v. Cochran,* 43 Iowa 544; *Railroad v.*

*Grimes,* 38 Kan. 241, 16 Pac. 472; *Decker v. Insurance Co.,* 66 Me. 406; *Harris v. Thayer,* 125 Mass. 443; *Ripon v. Bittel,* 30 Wis. 614; *Howe v. Ray,* 113 Mass. 88; *Sherley v. McCormick,* 135 Mass. 126; *Somerville v. Richards,* 37 Mich. 299; *Smith v. Insurance Co.,* 60 Vt. 682, 1 L. R. A. 216, 6 Am. St. Rep. 144; *Garr v. Cranney,* 25 Utah 193; *Klein v. Hoffheimer,* 132 U. S. 367; *Finding v. Hartman,* 14 Colo. 596, 23 Pac. 1004; *Cowles v. Coe,* 21 Conn. 220; *Railroad v. Graney,* 137 Ill. 628, 25 N. E. 798; *Blackmore v. Fairbanks, etc., Co.,* 79 Iowa 282, 44 N. W. 548; *Rivard v. Rivard,* 66 N. W. 681; *O'Connor v. R. Co.,* 27 Minn. 166, 6 N. W. 481; *Rightmire v. Hunteman,* 42 Neb. 119, 60 N. W. 368; *Bryant v. Town of Randolph,* 133 N. Y. 70, 30 N. E. 657; *Fuller v. Coats,* 18 Ohio St. 343; *Portland v. King,* 26 Pac. [Ore.] 376; *Donovan v. Railroad Co.,* 93 Wis. 373, 67 N. W. 721.)

As in the instant case, where all the facts are before the appellate court, and where such facts show that the party in whose favor judgment was rendered is entitled to recover, the judgment will not be reversed because of the admission of improper evidence. (*Holmes v. Goldsmith,* 147 U. S. 150; *McLennan v. Bank,* 87 Cal. 569; *Cowles v. Coe,* 21 Conn. 220; *Downie v. Nettleton,* 61 Conn. 593, 24 Atl. 977; *Lintner v. Millikin,* 47 Ill. 178.; *Dexter v. Harrison,* 146 Ill. 169, 34 N. E. 46; *Hinckley v. Somerset,* 145 Mass. 326, 14 N. E. 166; *Robinson v. Mining Co.,* 5 Nev. 43; *State v. Engle,* 21 N. J. Law 347; *Railroad v. Hendricks,* 6 N. Mex. 611, 30 Pac. 901; *Houghton v. Slack,* 10 Vt. 520; *Kimble v. Ford,* 7 Wash. 603; *Knapp v. Runals,* 37 Wis. 135.)

The admission of irrelevant evidence is no ground for reversing a judgment when it could not have influenced the final determination. (*Mining Co. v. Taylor,* 100 U. S. 37; *Kiewit v. Harris,* 17 Neb. 249, 22 N. W. 417; *Terry v. Starch Co.,* 43 Neb. 866, 62 N. W. 255; *Cahill v. Hirschman,* 6 Nev. 57; *Schenck v. Cuttrell,* 21 N. J. Law 5; *Alsop v. Hutton,* 1 Wyo. 284; *Davies v. S. S. Co.,* 89 Cal. 280;

*Marder v. Leary,* 137 Ill. 319; *Link v. Railroad Co.,* 3 Wyo. 680, 29 Pac. 741.)

The test of the admissibility of expert evidence is not whether the subject-matter is common or uncommon, nor whether the witness can claim superior judgment or powers of reasoning, or better comprehends and appreciates the matters in controversy; but the unbending test is whether the question upon which the evidence is offered is one of science or skill. (12 Am. and Eng. Ency. Law, 423; *Taylor v. Munroe,* 43 Conn. 36; *State v. Watson,* 65 Me. 74; *Glass Co. v. Lovell,* 7 Cush. [Mass.] 319; *Chicago v. McGiven,* 78 Ill. 347.)

The evidence shows no negligence on the part of the respondent or of any of its employees. The doctrine of the "turntable cases" has no application to a case of this kind. Railroad cars are not "dangerous machines" or "attractive nuisances" within the meaning of the rule laid down in the "turntable cases." (*Curley v. Railroad* [Mo.], 10 S. W. 593; *Witte v. Stifel,* 126 Mo. 295, 28 S. W. 891, 47 Am. St. Rep. 668; *Overholt v. Vieths,* 93 Mo. 422, 3 Am. St. Rep. 557; *Houck v. Railroad,* 116 Mo. App. 559, 92 S. W. 741; *Evansich v. Railroad,* 57 Tex. 123, 44 Am. Rep. 586; *Railroad v. Robertson* [Tex.], 14 L. R. A. 781; *Omaha v. Bowman,* 52 Neb. 293, 72 N. W. 316, 40 L. R. A. 531; *Harris v. Cowles,* 80 Pac. [Wash.] 537, 107 Am. St. Rep. 847; *Railroad v. McLaughlin,* 47 Ill. 265; *Curley v. Railroad,* 98 Mo. 17, 10 S. W. 593; *Catlett v. Railroad,* 57 Ark. 461, 38 Am. St. Rep. 254; 3 Elliott on Railroads [2 Ed.], sec. 1260; *Kaumerer v. Railroad,* 116 Mich. 306, 72 Am. St. Rep. 525.)

Where children are injured in consequence of stealing a ride on railway trains no recovery can be had. *Railroad v. Smith,* 46 Mich. 504; *Powers v. Railroad,* 59 N. W. 307; *Bollinger v. Railroad,* 49 Am. St. Rep. 379; *Railroad v. Hurt,* 13 S. W. 275; *Railroad v. Webb,* 99 Ky. 332, 35 S. W. 1117; *Pettit v. Railroad Co.,* 59 N. W. 1082; *Railroad v. Mutch,* 97 Ala. 194, 38 Am. St. Rep. 179, 21 L. R. A. 316; *Railroad v. Stumps,* 69 Ill. 409.)

If there was no breach of duty, there was no wrong, irrespective of appellant's capacity to know that what he was doing was dangerous. In other words, in considering the question as to whether a duty exists, there is no distinction between the case where an infant is injured and one where the injury is to an adult. (*Dobbins v. Railroad*, 41 S. W. 63; *Felton v. Aubrey*, 74 Fed. 353, 11 Harvard Law Review, 367, 368; *Emerson v. Peteler*, 35 Minn. 481, 59 Am. Rep. 337; *Catlett v. Railroad Co.*, 57 Ark. 461, 38 Am. St. Rep. 254; *Twist v. Railroad*, 39 Minn. 167, 39 N. W. 402; *Railroad v. Dobbins*, 40 S. W. 864; *Klix v. Nieman*, 68 Wis. 271; *Penn. Co. v. McMullen*, 132 Pa. St. 107, 19 Atl. 27; *Gillespie v. McGowan*, 100 Pa. St. 144, 45 Am. Rep. 365; *Nolan v. Railroad Co.*, 53 Conn. 461, 4 Atl. 106; *Matson v. Railroad Co.*, 9 Wash. 449, 37 Pac. 705; *Chrystal v. Railroad*, 105 N. Y. 164; *Mitchell v. Railroad*, 19 Atl. 28; *Sherman v. Railroad*, 72 Mo. 62, 37 Am. Rep. 426; 3 Elliott on Railroads [2nd Ed.], sec. 1259; 1 Thomp., Neg., sec. 1051.)

The appellant, though a child, was a trespasser. A young child, though incapable of negligence, is liable in trespass for an unauthorized entry upon another's land. (Cooley on Torts [2nd Ed.], 120; 11 Harvard Law Review, 367-370; *Felton v. Aubrey*, 74 Fed. 353; *Railroad v. Bradford*, 20 Ind. App. 355, 67 Am. St. Rep. 252; *Rodgers v. Lees*, 12 L. R. A. 218; *Formall v. Oil Co.*, 127 Mich. 496, 86 N. W. 946; *Ryan v. Towar*, 128 Mich. 463, 87 N. W. 644; *Witte v. Stifel*, 126 Mo. 295, 47 Am. St. Rep. 672; *Loftus v. Dehail*, 133 Cal. 214, 65 Pac. 379; *Barney v. Railroad*, 26 L. R. A. 853; White's Supplement to Thomp., Neg., sec. 1025.)

STRAUP, J.

This action was brought by the plaintiff to recover damages alleged to have been sustained by him by reason of the defendant's negligence. The accident happened in the defendant's railroad yard at Ogden. It was alleged in the complaint that the yard was located between two streets in a well-settled portion of the city; that in the vicinity of the ac-

cident it had been the custom of the public to cross the yard and walk along the tracks, and of children to play about the yard and ride on cars, with the knowledge and consent of the defendant; that the yard and cars operated therein were alluring and attractive to young children, who were attracted to the yard and tempted to ride on cars; that it was the duty of the defendant to fence the yard, and in switching cars to have a sufficient number of men engaged at such work to perform it with reasonable safety to those who might be in and about the yard, and to have persons stationed on the cars to control their movements and to observe proper lookout for the presence of children about the tracks; that the defendant negligently failed to perform such duties, by reason of which the plaintiff, a boy five years of age, who had been attracted to the yard and at play on or about the tracks, was run against and injured by a car moved and switched about the yard. The defendant denied the negligence charged in the complaint, and alleged that the plaintiff unlawfully, and without the knowledge or consent of the defendant, entered the yard and while trespassing therein attempted, without the defendant's knowledge or consent, to board a moving car, which was being switched about the yard, and in so doing fell and was injured without fault on the part of the defendant, and that the custodian of the plaintiff, in whose charge the child had been placed by its father, was guilty of negligence in permitting it to wander about and to enter the yard. The case was tried to the court and jury.

Evidence was given, on behalf of the plaintiff, tending to show that the defendant's yard and tracks, about seven in number, extended in an easterly and westerly direction between Twentieth and Twenty-First streets, from Washington avenue on the east to and beyond Wall avenue on the west. There were no street or other crossings of the yard between Washington and Wall avenues, a distance of several blocks, the place where the switching of the cars was principally carried on. Dwellings and store buildings facing on Twentieth and Twenty-First streets were built on lots the rear of which abutted on defendant's yard. The residence of Mrs. Lowe,

in whose charge the plaintiff was, was south of the yard, and faced on Twenty-First street. The rear and north end of her lot was about one rod south of the railroad yard. All of the lots abutting on the yard were fenced by the lot owners, except the lot adjoining Mrs. Lowe's on the north. On that lot there was a building called "Turner's Hall," also facing on Twenty-First street. The rear of that lot was not fenced. There was a gate near the northeast corner of Mrs. Lowe's lot leading to the rear of the Turner lot. The plaintiff had been living with Mrs. Lowe three or four weeks prior to the injury. The accident happened about 3 o'clock in the afternoon. Prior thereto the child that day had been playing, the greater part of the time, in Mrs. Lowe's back yard. It had been absent only about ten minutes when Mrs. Lowe sent some one to look for it. It had then just been injured, and was being carried to Mrs. Lowe's yard by one of the railroad employees. The defendant, at the time of and prior to the injury, was engaged in switching cars about the yard.

One of its employees who was engaged at such work was called as a witness for the plaintiff, and testified that, while two coal cars were being switched from one track to another, the plaintiff, in company with an older boy, about eight or nine years of age, was seen about the yard. As the cars were slowly moved down the track, detached from an engine, the older boy ran after them, and attempted to catch hold of one of them. The plaintiff followed him about fifteen feet away. The witness called to them and told them to "get out of there." They were then nearly opposite the open and unfenced space at the Turner lot. The boys left the yard, and ran along the open space back of the hall, and disappeared from the sight of the witness. He did not see where they went after they left the yard, and paid no more attention to their movements. He continued with his work switching cars. After several other cars had been "kicked out," a refrigerator car was "picked up" and switched down the track. The distance from the point where it was switched out to the place of the accident was about ten or twelve car lengths.

The car was moved along the track detached from the engine at a speed of about three or four miles an hour. There was no one on the car. The witness further testified that when he switched the car out, and started it down the track, he did not see the boys, and did not know what had become of them, and had no knowledge of their return to the yard. The next thing that attracted his attention was a lady down the track throwing up her hands, and the noise of a little child crying. He was then four or five car lengths away. He ran to where the child was, and found it lying close to the south side of the track east of the refrigerator car, and about opposite the third lot east of Mrs. Lowe's house. The child's foot was run over by the car and injured. He picked the child up and carried it to Mrs. Lowe's yard. He further testified that prior to that day he had seen the older boy, who was a son of the defendant's car inspector, and who lived near by, in the yard several times, but each time he ordered him out. He had not seen the plaintiff in the yard prior to the day of the accident. He saw the child several times sitting on a chicken house in Mrs. Lowe's lot, watching the cars as they were being moved about the yard. He further testified that he and his co-employees were bothered by boys, most of them older than the boy with the plaintiff, going in the yard and getting on cars. The defendant had given positive instructions to keep children out of the yard, and the witness and other employees ordered them out whenever they saw them. Some of the boys, when driven out, threw rocks at the witness and made faces at him. Several times the employees telephoned to members of the police force to get the boys out of the yard. When boys were in the yard and ordered out they would leave, but when the employees again directed their attention to their work, they would frequently return. The time which elapsed between the time that the plaintiff and his companion were ordered out of and left the yard and the happening of the accident was about two or three minutes.

The lady down the track testified, on behalf of defendant; that she observed the car moving toward her. She saw the

plaintiff and his companion standing in the yard between the fence and the track, looking toward the car. When the car got to them, the plaintiff took hold of the lower bar of the ladder at the side of the car and lifted himself up, when his limbs swung inward, and he fell under the car. She testified that they had been standing at that place only a short time— just a few minutes. She did not then see any of the employees of the defendant. Another witness on behalf of the defendant testified, in substance, that she saw the plaintiff take hold of the car, and saw him fall. Another witness, a boy about twelve years of age, also testified for the defendant, in substance, that he did not see plaintiff get on the car, but saw him run towards and around the end of it, and then disappear from his sight; that he saw plaintiff's companion get on the car; that when the plaintiff was injured, his companion jumped off and ran away.

The foregoing is, in substance, all the testimony bearing on the assignment of errors. At the conclusion of the evidence the court, on the defendant's motion, directed the jury to render a verdict, "in favor of the defendant, no cause of action." The jury rendered a verdict, finding "the issues joined in favor of the defendant, and against the plaintiff, no cause of action." A judgment was entered on the merits in favor of the defendant, from which this appeal is prosecuted by plaintiff.

It is contended by appellant that, though the evidence was not sufficient to let the case to the jury, the court nevertheless was not authorized to direct a verdict and enter a judgment on merits, as was done. This claim is made upon the following statutory provisions (section 3181, Comp. Laws 1907): "An action may be dismissed or a judgment of nonsuit entered in the following cases: (1) By the plaintiff himself at any time before trial, upon the payment of costs, if a counterclaim has not been made, or affirmative relief sought by the answer of the defendant, etc. (2) By either party upon the written consent of the other. (3) By the court when the plaintiff fails to appear on the trial, and the defendant appears and asks for the dismissal. (4)

By the court when upon the trial and before the final submission of the case the plaintiff abandons it. (5) By the court upon motion of the defendant, when upon the trial the plaintiff fails to prove a sufficient case for the jury; provided, that the offering of evidence after the overruling of a motion for a nonsuit shall not be deemed or considered a waiver of the exception taken by the defendant to the order overruling such motion. (6) By the court when after verdict or final submission the party entitled to judgment neglects to demand and have the same entered for more than six months." Section 3182: "In every case, other than those mentioned in the next preceding section, judgment must be rendered on the merits." By reason of these provisions, especially subdivision 5 of section 3181, it is argued that the direction of a verdict in favor of the defendant, when the plaintiff fails to prove a sufficient case for the jury, can have no greater effect than the granting of a motion of nonsuit. Some language used by this court in the case of *Couch v. Welsh and Mfg. Co.*, 24 Utah 36, 66 Pac. 600, seems to lend some support to such a contention. In that case, at the close of plaintiff's evidence, a motion for nonsuit was made by the defendants. The motion was granted. The court then also directed the jury to return "a verdict for the defendants, no cause of action." The jury returned a verdict, finding "the issues for the defendants, no cause of action." On the verdict so rendered a judgment on the merits was entered, from which an appeal was taken. Among other things, it was urged that the court was not authorized to direct a verdict nor enter a judgment on the merits. This court, speaking through Mr. Justice Bartch, observed:

"Nor did the court, under the circumstances disclosed, commit fatal error, as claimed by counsel for the appellants, in directing a verdict for defendants at the same time of sustaining the motion for a nonsuit. The direction of such a verdict was nothing more than the determination of the case by the court on the same grounds which called for a judgment of nonsuit, and, under the circumstances, no prejudice resulted to the appellants. We do not, however wish to be understood as sanctioning such practice. We simply hold

that in this case it was harmless, and not prejudicial error. An instruction for such a verdict, given at the close of the plaintiffs' case, upon the ground of failure of proof, is in effect a nonsuit."

We, however, do not think the court meant to, or did, hold that a direction of a verdict in favor of the defendant, because the plaintiff had failed to prove a sufficient case for the jury, in all cases, has no greater effect than the granting of a motion of nonsuit. The effect of the holding was that, under the peculiar circumstances of the case, the action taken by the court was, in effect, not directing a verdict on merits, but only sustaining a motion of nonsuit. After such a conclusion was reached it is somewhat difficult to perceive upon what ground the judgment, which had been entered on the merits, was permitted to stand, instead of remanding the case, with directions to the trial court to vacate the judgment so entered and to enter a judgment of nonsuit. But let that be as it may, we do not think the case is an authority to the effect that, after both parties have rested and submitted the case for final determination, the court is unauthorized to direct a verdict and enter a judgment on the merits, especially in view of the language used by this court in the subsequent case of *Guthiel v. Gilmer,* 27 Utah 496, 76 Pac. 628. It was there said:

"When plaintiff at the former trial concluded and rested her case, two courses were open, either of which defendant could have pursued if he was confident of his position that plaintiff had failed to prove a sufficient case for the jury. One was a submission of the case on the merits for final determination, and thereby obtain a judgment that would be a bar to another action for the same cause; and the other was by motion for judgment of nonsuit, which, if granted, would leave the parties in the same situation, in relation to the matter in controversy, as they were before the action was commenced."

In some respects the principles applying to a motion of nonsuit also apply to a motion for a direction of a verdict. In a general sense it may be said that both take the place of a demurrer to the evidence and are governed by the same principles. But a demurrer to the evidence was a submis-

sion of the case for final determination, which determination called for a judgment on the merits. Our Code has provided under what circumstances a motion of nonsuit may be granted, and that the granting of such a motion shall not be an adjudication on merits, nor shall the overruling of such a motion preclude the moving party from thereafter offering evidence, as was the case on a demurrer to evidence. The court may, at the close of plaintiff's evidence, on plaintiff's motion, grant a voluntary, and on the defendant's motion an involuntary, nonsuit. The court may do the same thing at the close of all the evidence, and before the case has been submitted for final determination. In each of such cases the judgment is not on the merits. The plaintiff, however, at the close of his evidence may rest and submit the case for final determination. The defendant may do likewise without offering any evidence. So, too, at the close of all the evidence offered by both parties, the plaintiff may still submit the case for final determination, as also may the defendant. Whenever a party "rests" his case, he indicates that he has produced all the evidence he intends to offer, and submits the case, either finally, or subject to his right to afterwards offer rebutting evidence. When both parties have "rested," they indicate a submission of the case for final determination. The determination on such a submission is on the merits. If the facts are in dispute, the case must be sent to the jury for their finding, upon which a judgment on merits is entered accordingly. If the facts are not in dispute, the determination presents a mere question of law, to be decided by the court, upon whose decision, or upon the rendition of a verdict directed by him, a judgment is also entered on the merits. Upon a final submission of the case, when there is no evidence to sustain the case of the party having the affirmative, it is proper for the court to direct a verdict against him. It is as proper for the court to direct a verdict against the plaintiff, in the absence of proof to establish a fact essential to his case, as to direct a verdict against him when the proof, either upon his own evidence or that of the defendant, conclusively establishes some affirmative defense. We do

not understand the statute to mean that the court is authorized to direct a verdict in the one instance, but not in the other, or that the court is unauthorized to direct a verdict in any case. In the case in hand, upon the evidence adduced by both parties, the case was submitted for final determination without the making of a motion of nonsuit or dismissal by either party. Upon such a submission the defendant urged that the facts were not in dispute, and that, on the established facts, it, as matter of law, was entitled to a judgment in its favor. On the other hand, the plaintiff urged that the facts were in dispute, and that the question of the defendant's negligence was one of fact, and not of law, and hence the determination of the case required a finding by the jury. In such case the determination, whether made by the court as matter of law, or by the jury as matter of fact, called for a judgment on the merits. We are therefore of the opinion that the court was fully authorized to direct such a verdict and to enter such a judgment. Whether the ruling was erroneous remains to be considered.

It is urged that the court erred in directing a verdict because no grounds were stated for such action. This court has repeatedly held that the particular grounds upon which a motion for nonsuit is based must be stated in order that the attention of the court and counsel may be called thereto, and that the defects in the proof may be obviated and corrected, if such defects admit of correction. *Frank v. Bullion-Beck, etc., M. Co.,* 19 Utah 35, 56 Pac. 419; *Skeen v. O. S. L. R. R. Co.,* 22 Utah 413, 62 Pac. 1020; *Lewis v. Mining Co.,* 22 Utah 51, 61 Pac. 860; *Wild v. Union Pac. Ry. Co.,* 23 Utah 266, 63 Pac. 886, and other cases there cited. From the above cases it will be seen that a judgment of nonsuit in a number of them was reversed because the grounds upon which the motion was based were not sufficiently specified, regardless of the question of the sufficiency of the evidence to send the case to the jury. The general rule, when a motion is denied or an objection overruled, the moving party is permitted, on appeal, to urge only such grounds for a reversal as were specifically pointed out or made by

him before the trial court, but when the motion or objection is sustained, because of the presumption against error coming to his aid, a party is permitted, on appeal, to defend the ruling on any ground inhering in the record, was, either in effect or expressly, held, in a number of cases in this jurisdiction, not applicable to a motion of nonsuit. In the case of *White v. Rio Grande Western Ry. Co.,* 22 Utah 138, 61 Pac. 568, it was expressly decided that there is no difference with respect to the rule requiring a specification of grounds when the motion is denied and when the motion is sustained. In *McIntyre v. Ajax Min. Co.,* 20 Utah 332, 60 Pac. 552, this court held that "an appellate court will not sustain a motion for nonsuit, except on the grounds alleged in the motion," and approvingly quoted the syllabus, in the case of *Palmer* v. *Marysville Dem. Pub. Co.,* 90 Cal. 168, 27 Pac. 21, that

> "It is error for the trial court to grant a nonsuit, unless the grounds therefor are called to the attention of the trial judge and the plaintiff at the time the motion is made; and, where none of the grounds upon which the nonsuit is asked are sufficient to warrant the court in granting the motion, the order granting it will be reversed, although another ground, not specified in the motion, might have warranted the order."

We think the reasons given by courts, requiring the grounds upon which a motion for nonsuit is based to be specified, in order that the court may know upon what question of law the case is asked to be taken from the jury, and the party against whom the motion is directed may be afforded opportunity to correct the defects, if they admit of correction, and can be obviated by additional evidence, apply with equal force to a motion for a direction of a verdict. If such opportunity should be afforded him on a motion of nonsuit, which, if granted, not being an adjudication on the merits, and not a bar to another action, for much stronger reasons should such opportunity be given him on a motion for a direction of a verdict, which, if granted, would be a bar to another action. However, in the case of *Owens v. San Pedro, etc., R. Co.,* 32 Utah 208, 89 Pac. 825, this court, in speaking through District Judge Ritchie, said:

"Reversal of the case is asked also because the defendant did not specify why a verdict should be directed, and because the court did not give its reasons for directing a verdict for the defendant. We see no reason for extending the rule requiring that a motion for a nonsuit should be based upon specific reasons to include a motion to direct a verdict. A trial court, when asked to direct a verdict, may require the moving party to state his reasons if the circumstances of the particular case require it; but there is no merit in the proposition that the court should be required to specify its reasons for directing a verdict."

If by these expressions it was intended to hold that a specification of grounds upon which the direction of a verdict is based need not be made in any case, we disapprove the holding. To be in harmony with the prior decisions of this court requires a holding that a sufficient specification of grounds must be made, either in the motion or by the court in directing the verdict, to indicate the question of law that takes the case from the jury. If, in a case based on negligence, where the answer puts in issue all the material allegations of the complaint, and contains affirmative allegations of contributory negligence, fellow service, assumption of risk, and settlement, the court may, at the conclusion of all the evidence, direct a verdict for the defendant upon a mere general motion, without specifying grounds therefor, counsel have not, nor have we on appeal, any means of knowing upon what principle of law the case was taken from the jury. In such case there would be no means of knowing whether the direction was made upon the ground that the evidence was insufficient to show negligence on the part of the defendant, or upon the ground that the evidence conclusively established one or more of the affirmative defenses pleaded in the answer. The court may not thus hurl a mere *brutum fulmen* in the midst of the case, and leave counsel in the dark to speculate upon the point or points struck at, and cast the burden on the appellate court to examine the entire record to ascertain if there is anything upon which such a ruling could properly have been based. In such case it can well be said, as was said by the court in the case of *Demill v. Moffat,* 45 Mich. 410, 8 N. W. 79:

"This court reviews the judgments of the circuit court in law cases on questions of law only. What question of law is involved in this charge of the circuit judge? Was he of opinion that the plaintiffs had given no evidence tending to the proof of their heirship? If he had said that, we could have reviewed the evidence on that point, and should probably have had no difficulty in pointing out his error. Did he think adverse possession was satisfactorily made out? If so, as that is a defense resting wholly upon facts, it is plain he should have taken the opinion of the jury, unless the facts were unmistakable in their import and were undisputed. Did he think the defendants had proved title out of Thorn through the alleged deed of Hamilton? This again was a question of fact, and the existence of the fact was denied and vigorously contested. But we need not proceed from point to point in the case, and endeavor to surmise on what ground the plaintiffs were turned out of court. The circuit judge has given us no light on that point, and the record can afford none. What we are asked to do in this case is to examine an elaborate record in order to ascertain whether the plaintiffs made out such a case as entitled them to go with it to the jury, and if so, whether the defendant met it by any defense that was so entirely unquestionable as to leave to the jury no discretion to do otherwise than give him a verdict. In other words, we are invited to review this case upon all the facts. It is sufficient for us to say in reply that the law has given us no such authority."

There, and in subsequent cases from that court, it was held that when a judge takes a case from the jury, he should specify the particular ground or grounds that appear to him to justify it. *Rayl v. Estate of Hammond,* 95 Mich. 22, 54 N. W. 693; *Tillotson v. Webber,* 96 Mich. 144, 55 N. W. 837; *Hanley v. Balch,* 106 Mich. 46, 63 N. W. 981. To the same effect are the decisions of the Supreme Court of South Dakota. In the case of *Tanderup v. Hansen,* 8 S. D. 375, 66 N. W. 1073, it was said:

"Where such a motion is made, the specific ground upon which the motion is made must be stated. It is due to the court and the opposing counsel, that their attention should be called to the precise defect in the evidence, or the omission of evidence, that the party claims entitles him to the direction of the verdict. It is due to the court to enable it to pass understandingly upon the motion, and it is due to counsel that he may, if possible, supply the defective or omitted evidence if permitted to do so by the court."

The same doctrine is stated in 6 Pl. & Pr. 699, in the following language:

"The motion to direct a verdict, and the judge in making such direction, should specify the particular ground or grounds which justify it." ·

We have not been referred to, nor have we seen, any case holding to the contrary. This, however, does not mean that the *movant* of the motion or the court is required to state reasons supporting the grounds. If the grounds are sufficiently specified to call attention to the particular defects and the question of law on which the case is taken from the jury, that is all that is required. A mere general statement that, under the evidence, the plaintiff is not entitled to recover, or that the defendant is entitled to a verdict, or that the plaintiff has not made a sufficient case to go to the jury, does not point to anything. If, however, in a case of negligence a specification is made that the evidence is insufficient to show negligence on the part of the defendant, or that under the evidence the plaintiff is conclusively shown to be guilty of contributory negligence, or that he assumed the risk, etc., such a specification is ordinarily sufficient. If a verdict is directed on the ground that the evidence is insufficient to show negligence on the part of the defendant, it sufficiently is made to appear on what question of law the case was taken from the jury. The making of such a specification ordinarily points out the defect within the meaning of the adjudicated cases. The court in such instance may give reasons why in his opinion the evidence is insufficient to show such negligence. Though the reasons given may be groundless, yet, if upon an examination of the record the evidence is found insufficient to show such negligence, the ruling must be upheld. The rule is also qualified to the extent that, if it is otherwise made manifest upon what question of law the case was taken from the jury, and the defects upon which it was based do not admit of correction, or could not have been cured had direct attention been called thereto, a failure to specify grounds will not reverse the ruling. *Daley v. Russ,* 86 Cal. 114, 24 Pac. 867; *Fontana v. Pac. Can. Co.,* 129 Cal. 51, 61 Pac. 580. It may, however, be urged that a request to direct a verdict is a request to charge, and that a party submitting

requests is not required to state reasons or grounds in support of them. But a request to direct a verdict is not a request to charge the jury. It is, in effect, a motion to take the case from their consideration. When a verdict is directed by the court, the jury is bound to render the verdict as directed. In such instance the court alone determines the case, and there is no occasion to instruct or charge the jury in respect of the law applicable to the case.

With these observations we now proceed to the question in hand. At the conclusion of all the evidence, and after both parties had rested, counsel for the defendant stated: "I now move the court to instruct the jury to return a verdict in favor of the defendant, no cause of action; and, in view of the elaborate discussion that has been had, I am not inclined to argue it, unless the court desires to hear further upon some particular question from us. If counsel cares to argue it, I will reply to any suggestions that he may have." It must be conceded that the motion itself specifies no grounds, and were that all that was made to appear, it would be very doubtful whether the question of law upon which the verdict was asked to be directed was sufficiently indicated. Counsel for plaintiff in reply to the suggestion stated that he did not care to argue questions which had already been argued. As disclosed by the record, the questions referred to involved the doctrine of the "turntable" cases, and its application to the facts in the case. Counsel for plaintiff further stated that, under all the circumstances of the case, whether the employees of the defendant exercised due care in the premises was a question of fact for the jury, and urged that the evidence was conflicting as to whether the child caught hold of the car, or whether it was injured in some other way. The court then observed that, if counsel desired to take the position that there was such a conflict, he would exclude the jury and permit counsel to argue it. The jury was thereupon excluded, and the matter then discussed by counsel for plaintiff. In that connection he also discussed the question, and took the position that the employees were guilty of negligence in not anticipating the return of the child, and

in failing to discover it after it had returned to the yard. At the conclusion of plaintiff's discussion, the court indicated that he did not care to hear from counsel for the defendant, and stated that, in his opinion, the evidence without dispute, showed that the plaintiff attempted to get on the car, or was riding on the car, at the time the injury was inflicted, and that, under the circumstances, he was not entitled to recover. The jury was thereupon recalled, and directed to return a verdict for the defendant. The particulars upon which the verdict was directed were therefore called to the attention of counsel, and the question of law upon which the verdict was directed sufficiently indicated. If the defects were curable, plaintiff was in the same position to cure them as though the motion itself had specified the grounds.

This, then, brings us to the further point, made by the appellant, that the evidence was sufficient to send the case to the jury on the question of the defendant's negligence. It must be conceded that the plaintiff's presence about the yard and the tracks was unauthorized, and that the defendant owed it no affirmative duty in requiring its employees about the yard to observe a lookout to discover it, or to manage and operate the cars in the yard in anticipation of its presence, unless, as urged by counsel for the appellant, the doctrine announced in the "turntable" cases shall be applied and given effect. In this connection it is claimed that the yard and the switching of cars were dangerous and attractive agencies or instruments, which allured and attracted young children to the yard and about the cars; that because of such allurement, children had frequently been attracted to the yard, and therefore the employees of the defendant were required to anticipate the presence of children, and to so manage and operate the cars as not to injure them, with respect to which, it is contended, the evidence was sufficient to warrant a finding by the jury that the defendant's employees were negligent. In the case of *Brown v. Salt Lake City,* 33 Utah 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619, we had occasion to consider the doctrine announced in the "turntable" cases, and there, with considerable hesitancy, applied it. The doctrine was

there extended further than applied by some courts. Believing now, as we did then, that, under the peculiar facts and circumstances, the doctrine was there properly applied, we nevertheless are of the opinion that it was extended about as far as any court has yet applied it. The conflict in the authorities, both in recognizing and in applying the doctrine, was there pointed out. It is not necessary to again review the cases. It is well recognized that, as a general rule, no duty is imposed upon the owner of premises to keep them in a safe or suitable condition for the visits of those who, without license or invitation, may come upon them for their own convenience or mere pleasure, or who otherwise enter upon them as mere trespassers. The doctrine underlying the "turntable" cases is that the leaving or maintaining of a dangerous and attractive machine, or other instrument or agency, upon one's premises, under circumstances which naturally tend to attract or allure young children of immature judgment, and to induce them to believe that they are at liberty to enter and handle or play with it, is tantamount to an implied invitation to enter. Hence a corresponding duty is imposed upon the owner or occupant of the premises to prevent the intrusion, or to protect from personal injury such children as may be so attracted and thus induced to enter, and who are incapable of appreciating the attending dangers. The doctrine is founded upon the principle that when one sets a temptation before young children under circumstances which in law is equivalent to the holding out of an inducement to enter, he must use ordinary care to protect them from harm. It is but applying the general rule that, when one induces or invites another upon his premises, he must use ordinary care to avoid injuring him.

It was upon such theory that the doctrine was applied by us in the *Brown Case*. We, however, are of the opinion that the facts here do not warrant the application of the doctrine. It is not the keeping or leaving of all kinds of dangerous and attractive machines or other instruments upon premises that renders the owner or occupant liable if he does not take precautions to guard or protect them, or to prevent intrusions and

unauthorized visits of children. The instrument or agency must not only be dangerous and attractive, but the circumstances of leaving and maintaining it must also be such as to induce young children to believe that they are at liberty to enter and handle or play about it. That is, it must be made to appear, either from the character of the instrument or agency itself, or from the manner and circumstances under which it was maintained or left about the premises, or from other conduct on the part of the owner or occupant of the premises, that an inducement or its equivalent was held out to young children to enter. Not necessarily the doing of something on the part of the owner or occupant for the purpose of inducing the entry, but the doing of something other than a mere operation of the machine or instrument, in the ordinary and usual manner, which has the effect of causing or inducing the entry. Operating a machine in a factory may be dangerous and attractive to young children. If they are induced to enter from an attraction arising merely from the ordinary operation of it, and from no other conduct on the part of the owner or occupant of the premises, the doctrine ordinarily is not applicable. Furthermore the doctrine is not generally applied to attractions arising from the ordinary conduct of a business, or from the mere operation of a machine or other instrument or agency operated in the usual and ordinary manner. It is generally applied to a machine or thing at rest, and left unguarded and unprotected, under circumstances where children are exposed to danger and injury by their handling or meddling with it. If the doctrine should be applied to a railroad yard, where the ordinary business of railroading and switching is carried on, we see no reason why it should not be applied to an ordinary railroad track, and to cars operated upon it in the ordinary business of railroading, or to any other business involving danger by coming in contact with its operations. If the employees of the defendant owed any duty to use care in anticipating the presence of children in and about the yard and to be on the lookout for them, and, in the switching of cars about the

34 Utah—29

yard, to exercise care to avoid injuring them, it must rest on some principle other than that based on the doctrine of the "turntable" cases.

It is urged that the defendant owed such duty because of the frequency of the presence of children about the yard, and on the further claim that the employees ought to have anticipated that the plaintiff and his companion might return, and therefore the employees were required to ascertain if they were about the yard before moving and switching the car upon which the plaintiff attempted to ride, and that in switching cars about the yard an employee ought to have been stationed on the car as it was propelled along the track to observe a lookout for children, to warn them of its approach, and to prevent them from getting on it. Upon these questions the appellant contends that he was entitled to have the judgment of the jury. Before it can be urged that the employees were required to observe a lookout and to operate and manage the cars about the yard with reference to the plaintiff's presence, it must first be made to appear that they owed a duty in the premises to use care. That is, before negligence can be predicated on a failure to observe a reasonable lookout or in the manner in which the cars were operated or managed about the yard, it must be held that a duty to use care in such particular was owing from the defendant to the plaintiff. For every case of actionable negligence involves a duty to use care and a breach of such duty resulting in injury. Whether in a given case a duty to use care was imposed on a party charged with negligence is ordinarily a question of law. A railroad company, as matter of law, owes a duty to those who are rightfully about its premises, or who are there with its express or implied permission or invitation, to use care. It ordinarily owes no such duty to one who is wrongfully about its premises. The employees of the defendant were under no duty to use care in the handling of the cars about the yard in anticipation of wholly unauthorized intrusions of others. As to such persons, no duty to use care arose until their presence was discovered. The evidence does not warrant a finding that the public or the people of the neigh-

borhood had generally or habitually traversed the yard, or that it was otherwise traversed or used by them under circumstances which would justify a finding that the defendant had invited or permitted or acquiesced in such use being made of its premises. Where the public or the people of a neighborhood, though technically unauthorized, have for a considerable length of time generally or habitually traversed railroad premises without objection, there is much reason for holding that the employees of the railroad company are required to take notice of such fact and to regulate their conduct accordingly. But the evidence does not show that kind of a case, or any case, where the unauthorized or uninvited presence of any one was acquiesced in or permitted without objection. The evidence does show that children frequently visited the yard, but each time they were not only ordered out, but were made to leave. In no sense were the visits permitted or acquiesced in by the defendant or its employees. To the contrary, they were expressly forbidden by them. The case is one, therefore, where no duty was owing on the part of the defendant's employees to exercise care in the handling of the cars about the yard until the plaintiff was discovered. There is much reason for holding that, when a child of tender years or of immature judgment, although a trespasser, is discovered or seen about the premises, it may not be regarded in the same situation as that of an adult or conscious trespasser where no duty is owing except to refrain from inflicting a willful injury or an injury by gross negligence. An adult or conscious trespasser may be expected to take care of himself and keep out of danger, and the employees about the premises may regulate their conduct upon the assumption that he will do so, until a situation is disclosed making it apparent that he is not aware of the peril or danger threatening him. But when a child of tender years or of immature judgment, although a trespasser, is discovered about the premises, the employees may not, as in the case of an adult, act upon the assumption that it will take care of itself and keep out of danger, but a further duty is imposed upon the employees

to exercise care commensurate with the situation to avoid injuring it.

In this case the presence of the plaintiff and his companion, on their first visit to the yard, was discovered by the defendant's employees. Instead of remaining passive and inactive, the employees took sufficient affirmative action in the premises to cause the removal of the children. In obedience to the direction given them they left the yard and entered upon adjoining premises, and disappeared from the sight of the employees. The employees gave the matter sufficient attention to satisfy themselves that the children had left the premises, and that they were no longer in danger. Up to this point it is not contended that the defendant's employees did not do all that due care required. Thereafter they directed their attention to their work, and continued switching and moving cars about the yard. In a few minutes the children, without the observation of the employees, again entered the yard and stood between the fence and the track several lots to the east of the place where they had left the premises, and there watched the car slowly approaching them. When it reached them, they, without the knowledge of the defendant's employees, took hold of it and attempted to get on it. To now hold with appellant's contention that the employees ought to have anticipated that the children might return, and that they were required to observe a lookout for them before moving and switching the car from one track to another, or to accompany it so as to warn the children away or prevent them from getting on it, requires not only a holding that the employees were in duty bound to use care to discover the presence of trespassing children, and of wholly unauthorized intrusions of others, to the same extent as to discover the presence of persons and children who may, with knowledge on the part of the employees, be rightfully about the premises, but also requires a holding that the employees were required to use care to prevent trespassing children from injuring themselves in the defendant's yard. Upon the undisputed facts in the case the law does not warrant such a holding. Though it should be held that the

employees, in the switching and moving of cars about the yard, owed a duty in the premises to use care in such operations, the evidence is insufficient to justify a finding that such operations were conducted in a negligent manner, or that the act of moving the car along the track was the proximate cause of the injury. So far as made to appear, the car was switched in the usual and ordinary way from one track, and moved along another, at a speed of from three to four miles an hour. The children were not struck by the car. It was not the manner in which the car was operated that caused it to collide with plaintiff, or that caused the plaintiff coming in contact with it. The direct cause of his coming in contact with the car was his taking hold of the car and attempting to ride on it without the knowledge or consent of the defendant's employees. While the child, because of its age, cannot be regarded a conscious trespasser, nor held chargeable of contributory negligence, nevertheless the consequences of its acts cannot be charged to the defendant. The conduct of the child was in no sense influenced or induced by any act or conduct on the part of the defendant or its employees, nor was the injury occasioned because of any negligence on their part. We are of the opinion that the court was justified in directing a verdict in favor of the defendant.

The judgment of the court below is therefore affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.