## CATES *v.* ITNER.

A workman engaged in the same job with others and having direction of it is not a vice-principal of the master, but stands on the footing of a mere fellow-servant.

Argued May 17, — Decided June 7, 1898.

Action for damages. Before Judge Berry. City court of Atlanta. November term, 1897.

The damages were alleged to have been sustained by reason of the plaintiff having been struck by a piece of timber which slipped from a rope fastened to it for the purpose of raising it, by means of pulleys, to the top of a certain building then in course of erection, the defendant being a contractor engaged in erecting the building, and the plaintiff being one of his employees, and then engaged, under his direction and supervision and that of a certain boss employed by him, in pulling the rope for the purpose stated. He alleged that the rope was fastened to the timber by the boss, under the immediate supervision of the defendant, and was fastened negligently; that it was wet where it was fastened, and defective and unfit for the use intended; that it was the duty of the defendant and of the boss, and not that of the plaintiff, to fasten the rope to the timber; that the defendant knew, and plaintiff did not know and had

no opportunity of knowing, the condition of the rope and the negligent manner in which it had been fastened; that the boss was incompetent for the proper discharge of the duties assigned him, and this was known to the defendant and unknown to the plaintiff; and that the injuries sustained by the plaintiff were the direct results of said negligence, unmixed with any negligence on his own part. A nonsuit was granted, and plaintiff excepted. He testified, that he was at work in the basement of the building, with several other men, pulling up, by means of a rope and pulleys, timber "4 by 12 and 16 feet long," to an upper story of the building, as the carpenters wanted it. There was a squad of men at the top and a squad at the bottom. His duty was to pull the rope, and he was doing this under the direction of the boss, who was put there, he supposed, by Itner (defendant), who was the contractor for the work. Davis was the boss, and gave the orders to pull, and the plaintiff and the other men obeyed. Three of them were pulling, and Davis was at the bottom, with them, looking on and calling out to them to pull. Davis tied the rope to the scantling. He tied it and took it off every time. His business was to get the lumber up. The carpenters got word to Davis when they wanted timber up-stairs, and Davis told plaintiff what to take. A piece of timber which the plaintiff was drawing up slipped out, after it got to the upper story, and Davis halloed, "Pull, boys." The plank came down endwise, and struck plaintiff on the ankle, causing the injuries complained of. At the time it slipped the rope was damp; it was "sort of" wet. It was exposed that night, and not taken in. It was a hemp rope, about as large as a man's wrist. Plaintiff found it was wet, after he was hurt. Several told him it was exposed. He is certain it was damp when they were pulling up the timber. He thought it was a good thing to pull by when it was wet, as he thought it would pull tighter. He does not know what made the timber slip out of the rope. Davis did not tie it like it ought to be tied; that is all plaintiff knows. He does not know whether it hit against anything above. He could not see it after it got to the first story. It was going through a hole about as big as a door, and plaintiff was right under the hole. When it started back, the

first knowledge he had was when he was "dead and come to again." He did not hear anybody say "look out," or anything. Itner said, "Take him up." Plaintiff never saw the rope after that. He does not know how long it was before he came to himself. He heard them talking about the rope being "sort of slack," and he ran out from there, and said, "Boys, help me." After that he was like a crazy man. He did not go back to look at the rope any more. He is not mistaken about its being wet. A dry rope is better than a wet one, because a wet one is more liable to slip. He knew a dry rope was better before he was hurt, because it is not so liable to slip. He never thought of it before he was hurt. He does not know how far the scantling was pulled up, but it was above the first story. He was at that time working for Itner. Itner hired him, and told him to pull the rope, and sent him to Davis and put him under Davis. Davis was next to Itner. Davis did not pay him. He supposes Davis kept his time. Itner hired the men needed for the work about the building. Sometimes Itner gave them orders about once in an hour. He was around about the building to see what he wanted done. He and Burke supervised and superintended all the work going on. He was named Tally instead of Burke. Tally bossed, — Tally and Davis. Davis did not have anything to do with the men up-stairs. If plaintiff had not done his work he supposes Davis would have dismissed him. He supposes Davis reported to Itner, and that Itner paid Davis. Plaintiff had been at work all the morning before the injury occurred, and he and the others carried up a good many pieces of big timber that morning. About three weeks before that he pulled up lumber and toted lumber for Itner. Davis had control of him during the time. When Itner consulted anybody, he consulted Davis about how it was to be done. Plaintiff set in there on July 3, and pulled up lumber about three weeks. He was hurt July 29. The same rope was used all the time in pulling up the timber. Davis did the tying. During the whole time the rope never broke. It was a strong rope. None of the timber ever slipped before when plaintiff was there. Davis tied all the knots up to that time. He never tied it right, because it slipped out. Davis was afraid,

he halloed so, and they got after him about making so much noise the day before.    They were after him before, and a gentleman threw some water on him.    Davis had pretty good sense, and if he had not, plaintiff supposes Itner would not have given him the place.    He was smart in some things.    He halloed and whooped; that was smart.    He rushed his business and was rushing it when plaintiff came there; he was always pushing.    "He generally did everything he did not to have any business."    Plaintiff knew he was doing that all the time. Plaintiff never made any complaint or told Itner he was rushing his business too much; etc.

*P. F. Smith* and *R. R. Shropshire*, for plaintiff.

*Watkins & Dean*, for defendant.

SIMMONS, C. J.    The evidence in the record clearly shows that the plaintiff in this case was injured by reason of the negligence of a fellow-servant.    This being true, he can not recover of the master.    *McDonald* v. *Eagle & Phenix Mfg. Co.*, 67 *Ga.* 761; s. c., fully reported, 68 *Ga.* 839; *Stanley* v. *R. & D. Ext. Co.*, 72 *Ga.* 202; *McGovern* v. *Columbus Mfg. Co.*, 80 *Ga.* 227.
*Judgment affirmed.    All the Justices concurring.*