OWENS v. SAN PEDRO, L. A. & S. L. R. CO.

No. 1743.   Decided April 8, 1907 (89 Pac. 825).

1. MASTER AND SERVANT — FELLOW SERVANTS — FOREMAN OF CONSTRUCTION CREW. Defendant railroad company had a superintendent of bridges, who had general supervision and control of the bridge work on defendant's line and the various crews of men engaged therein. One of these crews, of which plaintiff was a member, consisted of four men, with whom was also a foreman, who directed where they should work and what they should do. A push car without brake was used by the crew, and on the morn-

ing of the accident the foreman directed a scantling to be put on the car to be used as a brake, and in going down a grade directed one of the crew to so use the scantling, and in doing so it was jerked from his hand, and, striking the ground in front of the car, derailed it, thereby throwing plaintiff to the ground and injuring him. *Held,* that the risk of injury from the use of the scantling was a risk incident to the employment, and hence was assumed by the plaintiff.

2. TRIAL — DIRECTION OF VERDICT — SPECIFICATION OF REASONS. The trial court in directing a verdict is not required to specify its reasons for the direction.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by Frank Owens against the San Pedro, Los Angeles & Salt Lake Railroad Company. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Powers & Marioneaux* for appellant.

*C. O. Whittemore* and *Pennel Cherrington* for respondent.

APPELLANT'S POINTS.

This court has repeatedly announced the rule that a motion for a nonsuit must be denied if couched in such general terms that it fails to afford the plaintiff an opportunity to supply evidence of any fact which it is necessary should be established in order to entitle him to recover. (*Palmer v. Marysville Dem. Pub. Co.,* 99 Cal. 168; *Franks v. Mining Co.,* 19 Utah 45; *McIntyre v. Mining Co.,* 20 Utah 323; *Skeen v. Railroad,* 22 Utah 413; *Wild v. Railroad,* 23 Utah 265; *Blecher v. Murphy,* 81 Cal. 39.)

"The motion to direct a verdict, and the judge in making such direction, should specify the particular ground or grounds which justify it." (6 Ency. Pleading & Practice, 699; *Lewis v. Brown,* 89 Ga. 115; *Demill v. Moffat,* 45 Mich. 410, 45 Mich. 412; *Bergstrom v. Staples,* 82 Mich. 654; *Tillotson v. Weber,* 96 Mich. 144; *Mattoon v. Railroad,*

32 Utah—14

60 N. W. 69, 740; *Tanderup v. Hanson,* 66 N. W. 1073; *Rayl v. Hammond,* 95 Mich. 22.)

The following Utah cases have committed this court irrevocably to the doctrine that a foreman in complete charge of the work is not a fellow servant of the men who are under his control and whose duty it is to obey him. *Webb v. Railroad,* 7 Utah, 363; *Openshaw v. Railroad,* 6 Utah 137; *Armstrong v. Railroad,* 8 Utah 420; *Anderson v. Railroad & Depot Co.,* 8 Utah 128; *Reddon v. Railroad,* 5 Utah 344; *Johnson v. Coal Co.,* 76 Pac. 1089.

### RESPONDENT'S POINTS.

"The Court need not reopen a case for the taking of further evidence, the existence and materialty of which were known to the party offering it before the case was closed. (*Loftus v. Fischer,* 45 Pac. 328.)

"It is a convenience to this court to have the questions of law upon which it must pass specifically pointed out by the trial court, as has been said in *Demill v. Moffat,* 45 Mich. 410, and other cases, but we understand that these cases go no further than to hold that the trial judge should clearly show the question of law that takes the case from the jury. This must be understood to be restricted to reasonable limits, . . . and it has frequently been held that the result of the case here cannot depend upon right reasons for his ruling having been given by the trial judge." (*Tillotsen v. Weber,* 96 Mich. 144; *Boland v. Railroad,* 36 Mo. 485; *Gerding v. Haskin,* 141 N. Y. 514; *Myers v. Kingston Coal Co.,* 126 Pa. St. 582.)

Such injuries as the plaintiff sustained were the result of one of the risks assumed by him in his employment with the defendant. (*Dunn v. Railroad,* 28 Utah 478; *Christienson v. Railroad,* 27 Utah 132; *Grandin v. Railroad,*— Utah— 85 Pac. 357; *Roth v. Eccles,* 28 Utah 457.)

Barrett and the appellant were workings together in a common employment and both were directly co-operating in the business of the respondent, which was the building of its bridges, and both were necessary to that business and were

fellow servants under the law. (*Lebanon Coal & Machine Ass'n. v. Zerwick,* 77 Ill. App. 486.)

If the decisions of the Supreme Court of the United States count for anything, Barrett must be held to have been a fellow servant of plaintiff and appellant. (*Railroad v. Baugh,* 149 U. S. 368, 37 Law Ed. 772; *Martin v. Railroad,* 166 U. S. 399, 41 Law Ed. 1051; *Railroad v. Hambly,* 154 U. S. 349, 38 Law Ed. 1009; *Railroad v. Peterson,* 162 U. S. 346, 40 Law Ed. 994; *Railroad v. Conroy,* 175 U. S. 323, 44 Law Ed. 181; *Lindevall v. Woods,* 41 Minn. 212; *Brown v. Railroad Co.,* 27 Minn. 162; *Stephani v. Railroad,* 19 Utah 196; *Sartin v. Railroad,* 27 Utah 447.)

## STATEMENT OF FACTS.

The appellant, as plaintiff, brought this action for personal injuries received while in the employ of the respondent as a carpenter working on bridges. The case was tried to a jury, and at the close of the evidence the court, on motion, directed a verdict for the defendant. The plaintiff appeals.

The defendant company had a superintendent of bridges by the name of Young, who had general supervision and control of the bridge work on the defendant's line of railroad and of the various gangs of men engaged therein. George Barrett was foreman of one of these gangs, consisting of four men besides himself. Young gave Barrett general directions regarding the work, but was not often present with this crew. Barrett had control of them in the conduct of their work —directed where they should work, and what they should do. The plaintiff was employed by the company at Salt Lake City and sent to Modena, Utah, where he reported to Barrett. After working at Modena for about a month, the crew moved to Islen, Nev., in December, 1903. They had been using in their work a push car which had no brake. It was generally loaded with lumber and pushed by the men from the camp to the bridge where they were at work. Sometimes the car would run by gravity, when they would ride on it short distances. On the morning of the accident, in loading the push car with lumber, across each end was placed,

as usual, a long 2 by 4, on which the lumber was piled. These pieces projected over the sides of the car so that one man could ride on each projecting end. When ready to start, the foreman directed James Wood, one of the crew, to put on the car a long 2 by 4 scantling. saying: "Boys, put that on so we can use it for a brake in case there is a train going ahead of ours that might take the frost off the rails. . . . We might need the brake. It is a heavy grade down here." The car had been greased that morning before starting. Prior to that occasion, when going to work, the push car had always been the first over the track, so that the frost in front of the wheels retarded its progress; but on this morning a train had gone ahead and taken the frost off the rails. Twice before the accident occurred the car was stopped by the use of the scantling as a brake. After taking a flagman on at the second stop the car was started again. The testimony of James Wood is a fair statement of what, from all the evidence, occurred next. He testified: "We ran along, then, until we came pretty near where we struck the next heavy grade. Then the car began to run, and Barrett told me to put the brake on again. I handed it to Owens as before, and he applied the brake. The foreman told me to put the brake on and check her before we came to the curve ahead of us, and I put the brake on with Owens' assistance, and I bore down on the brake, and the brake ran over the wheel, jerked it out of my hand." The scantling forcibly struck the ground in front of the car, derailed it, threw the plaintiff with great force to the ground, causing the injuries complained of.

RITCHIE, District Judge (after stating the facts).

The reasons urged by appellant for a reversal of the judgment are substantially two: (1) The injury was caused by an accident resulting from Barrett's negligence, and he was a representative of the master, and not a fellow servant. (2) The court in directing a verdict failed to specify the particular grounds that would justify such action.

The accident which caused appellant's injury occurred in the state of Nevada, and the fact is stipulated in the record

that there is no statute in Nevada defining any doctrine relating to fellow servants, and that the common law prevailed in that state at the time of this accident. The appellant rests his claim for right to recover on the doctrine which is commonly called, somewhat vaguely, the "superior-servant dotrine." Several Utah cases are cited in the appellant's discussion of the matter in his brief. It is not necessary to determine whether this rule was ever established in this state independent of statutory provisions. The relations between master and servant are now defined in large measure by statute, and the question is of consequence only when matters arise for investigation which have occurred in other states and are therefore to be interpreted by the laws of such states. Unfortunately there is neither statute nor judicial decision in the state of Nevada which aids the court in ascertaining what the law of that state is, except the statutory provision that the common law is in force. Considering, however, that the question is one of difficulty, obscured by contradictory decisions in different jurisdictions, and bearing in mind, also, that the superior-servant doctrine has not been accurately defined in any formula which has been generally accepted in all the jurisdictions upholding it, this court should not undertake to determine whether it is or is not a part of the law of the state of Nevada, unless it is essential to a decision in this case. We do not think it is essential. The plaintiff and the other workmen on the morning in question were engaged in their ordinary work. The matter of going to and from the camp to the place of work and transporting the materials was as much a part of their work as actually laying timbers on the bridge. The plaintiff was fifty-two years old, and, so far as the evidence shows, a carpenter of no less experience than his fellow workmen, including the foreman. So far as the exercise of judgment or prudence in pursuing their work depended upon their experience in the ordinary affairs of life outside of their skill as carpenters, they were on a common level, and there is nothing showing that the foreman had any greater experience than the others upon which he might have founded a better

judgment. The unusual things occurring that morning, which in part contributed to the accident, were the grade was steeper than usual, a train had passed before them and taken the frost off the rails, and the running gear of the car had been freshly greased. Each workman could judge of these matters and consider what would be wise and prudent in managing the car as well as the foreman, and these facts did not place upon him as the representative of the company any additional responsibility. There was nothing about the situation as thus presented which was not perfectly open and obvious to all the workmen. The risks and dangers, such as they were, were incident to the manner of conducting their work, and were a part of the ordinary risks of their employment assumed by them. The following cases, selected from among a large number involving somewhat similar circumstances, illustrate the principles involved: *Northern Pac. R. R. v. Peterson,* 162 U. S. 348, 16 Sup. Ct. 843, 40 L. Ed. 994; *Hofnagle v. N. Y. Cent. R. R.,* 55 N. Y. 608; *Callan v. Bull,* 113 Cal. 593, 45 Pac. 1017; *Cates v. Itner,* 104 Ga. 679, 30 S. E. 884; *Andre v. Winslow Elevator Co.,* 117 Mich. 560, 76 N. W. 86; *McLaughlin v. Camden Iron Works,* 60 N. J. Law, 557, 38 Atl. 677; *Hughes v. Leonard,* 199 Pa. 123, 48 Atl. 862. We must conclude that there was no act of the foreman which would charge the defendant with negligence.

Reversal of the case is asked also because the defendant did not specify why a verdict should be directed, and because the court did not give its reasons for directing a verdict for the defendant. We see no reason for extending the rule requiring that a motion for a nonsuit should be based upon specific reasons to include a motion to direct a verdict. A trial court, when asked to direct a verdict, may require the moving party to state his reasons if the circumstances of the particular case require it; but there is no merit in the proposition that the court should be required to specify its reasons for directing a verdict. It is true, as appellant asserts in his brief, that courts sit to administer justice, not to take advantage of an oversight or inadvertence of a litigant or his

counsel. The fundamental principles guiding the courts in judicial proceedings require that the courts take due care to see that justice is done; but we cannot see that the recognition of this duty demands the establishing of the rule contended for. Trial courts will no doubt, according to the circumstances of each case, so far as within their power, see that substantial justice is done, and such a rule is not needed to aid them in that regard. The only cases cited in support of the defendant's position are from Michigan, and further research has failed to discover others elsewhere. The later decisions in Michigan qualify the rule previously made in that state by declaring that, where a "proper result has been arrived at," the action of the trial court will not be reversed for granting a motion to direct a verdict in the absence of a specification of reasons.

The judgment of the court below is affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.