SIMS *v.* MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY CO.

1. MASTER AND SERVANT—ASSUMPTION OF RISK—FEDERAL EMPLOYERS' LIABILITY ACT.
   Under the Federal employers' liability act the defense of assumed risk remains as at common law.[1]

2. SAME—RAILROADS—DUTY OF CAR INSPECTORS—NEGLIGENCE.
   A car repairer who is injured by a broken drawbar carrying iron, not discovered by the employer's car inspectors and reported by them for repair, falling upon him when he went under the car to repair another defect reported by the inspectors, cannot recover for the failure of the inspectors to discover the broken drawbar carrying iron, since he can only recover for some neglect of duty which the employer or its servants owed him and such failure to discover the broken appliance was a failure of duty owed only to the employer.

3. SAME—ASSUMPTION OF RISK.
   Plaintiff, a car repairer, assumed the risk where defendant's

---

[1] On constitutionality, application and effect of Federal employers' liability act, see notes in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.

car was placed upon a repair track for repair of a certain defect noted by defendant's inspector for repair, and plaintiff, upon going under the car to repair such defect was injured by a drawbar suddenly falling upon him by reason of broken carrying irons which had not been discovered and reported by the inspectors, and was not known to the defendant.

Error to Alger; Fead, J. Submitted June 20, 1916. (Docket No. 87.) Decided May 31, 1917.

Case by Joseph Sims against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*C. W. Dunton,* for appellant.

*R. W. Nebel* and *Le Gendre & Driscoll,* for appellee.

BIRD, J. The plaintiff was employed as an assistant car repairer in defendant's car shops at Glenwood, Minn. On the morning of January 31, 1913, plaintiff and his coworker, Frank Charbineau, were ordered to repair one of the defendant's box cars, which was standing on the repair track. They looked at the bad-order tag attached to the car, and found that the defect noted was a broken drawbar spring. This involved removing the broken one and replacing it with a new one. The plaintiff crawled under the end of the car to begin the work, and just as he did so the drawbar fell to the ground, striking his right hip and severely injuring it. At the conclusion of the proofs defendant's counsel protested that the case ought not to be submitted to the jury because no actionable negligence had been shown on the part of the defendant. The trial court took a different view of it, however, and submitted the case to the jury under the Federal act. The questions submitted were whether defendant was negligent in failing to make a proper and reason-

able inspection of the car; whether it was negligent in failing to notify plaintiff of the defect; and whether it was negligent in failing to chain up or fasten the drawbar so that it would not fall. The jury found a verdict in favor of the plaintiff, and the defendant has assigned error.

Counsel's main contention is that the trial court was in error in denying his motion for a directed verdict. The record discloses that defendant employed inspectors, whose duty it was to search for defects in the cars, and, when discovered, to note them upon a bad-order tag and attach the same to the car for the information of the car repairers. It appears that John Brandon, the official in charge of the work of repairs, instructed the assistant repairers not to spend any time looking for defects, as other men were employed especially for that purpose. It also appears that a custom existed, when drawbars were defective and liable to fall, to chain them up so as to prevent their falling. It further appears that the lug straps and carrying iron, which held the drawbar in place, were broken, and might have been discovered upon a reasonable inspection by the inspectors, and that plaintiff had no notice of these defects, or any opportunity to acquaint himself with them. With these things admitted defendant's counsel insists that no case was made for the jury because:

(a) The notations on the bad-order tag were not placed there for the protection of the repair men, but for their information.

(b) That the injury was one which could not have been reasonably anticipated; that the drawbar, as a matter of fact, remained intact until the car was placed in position upon the repair track; and that defendant had no notice that it was defective and liable to fall.

The real and important question in the case is whether plaintiff assumed the risk. Under the Federal act this defense remains as at common law. In com-

menting upon the effect of the act it was said in *Chesapeake, etc., R. Co.* v. *De Atley,* 241 U. S. 313, (36 Sup. Ct. 564) :

"The act of congress, by making the carrier liable for an employee's injury 'resulting in whole or in part from the negligence of any of the officers, agents or employees' of the carrier, abrogated the common-law rule known as the fellow-servant doctrine by placing the negligence of a coemployee upon the same basis as the negligence of the employer. At the same time, in saving the defense of assumption of risk in cases other than those where the violation by the carrier of a statute enacted for the safety of employees may contribute to the injury or death of an employee (*Seaboard Air Line* v. *Horton,* 233 U. S. 492, 502 [34 Sup. Ct. 635, L. R. A. 1915C, 1 Am. & Eng. Ann. Cas. 1915B, 475]), the act placed a coemployee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the risk."

The failure of the inspectors to discover the defect was the failure of a duty which they owed to the master, and not to the repair man. Their failure to note the defect on the bad-order tag absolved the repair men from any duty to repair the defect. Further than this, it does not appear to me that the neglect of the inspectors to discover the defect was of any importance to the plaintiff. If the plaintiff is to recover in this case, it must be in consequence of some neglect of duty which the master or its servants owed to him. This phase of the case appears to be ruled by *Erickson* v. *Manufacturing Co.,* 140 Mich. 434 (103 N. W. 828). In that case the plaintiff was relying on the act of the defendant in removing the hood and blowpipe from a planer as an act of negligence. The court there said in part:

"The same may be said regarding the absence of the hood and blowpipe. They were used for the purpose

of removing the chips and dust, and for no other purpose; and there is no evidence that such was ever used for the protection of operators, or that planers are ever covered for such a purpose. Furthermore, the situation was apparent, and the plaintiff assumed the risk of using the machine as it was."

That cars with defective drawbars were usually chained up when they came into the yard there is no question, and it is shown by the testimony of plaintiff that he relied upon this custom as a means of protection. It is obvious that this practice was one of necessity. If the drawbar were broken and had dropped down or had pulled out, it would have to be chained up in order to get the car into the repair yard. There is no proof that the chaining up of the drawbar was done with any idea or intention of protection to the men who might be called upon to repair it. Neither is there any proof or any instance shown where a drawbar was chained up after it was placed on the repair track. If the accident occurred in the manner detailed by the plaintiff—and we must assume that it did—it was an extraordinary coincidence that the drawbar should be held in place until just the precise moment when plaintiff went under the car. There is no proof that the defendant knew of the defect, but if knowledge had come to it after it had been placed on the repair track, it is not made clear to us that it would have been its duty to communicate the fact to the plaintiff. When plaintiff engaged to work in defendant's repair yard he assumed the risks naturally incident to the work, and I am of the opinion that this accident was one of the risks which he assumed.

The judgment is reversed, and no new trial ordered.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.