### HARTWICK v. CHICAGO & A. R. CO.

(Circuit Court of Appeals, Seventh Circuit. November 29, 1922. Rehearing Denied January 23, 1923.)

No. 3091.

1. **Master and servant** ⟜204(1)—**Assumption of risk a defense under federal statute.**

Though, under Employers' Liability Act, § 3 (Comp. St. § 8659), contributory negligence of one employed in interstate commerce is not a complete bar to recovery for injuries, assumption of risk, if established, is a defense.

2. **Trial** ⟜140(1)—**Rejection of part of plaintiff's testimony does not require rejection of all.**

In determining whether plaintiff, suing for injuries, was entitled to have the case submitted to the jury, the rejection of part of his testimony as contrary to the physical facts does not require rejection of all of it.

3. **Negligence** ⟜136(5)—**Question for jury.**

Plaintiff, suing for injuries, was entitled to have the question of his right to go to the jury determined, not by the weight of the testimony, but by the presence of any evidence that would support a verdict in his favor.

4. **Master and servant** ⟜213(4)—**Employee, taking unsafe position on work train, held to have assumed risk.**

An employee on a gravel train, who was sitting on the end of a loaded car while it was being moved, in a position where any sudden increase or

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

change of speed would have subjected him to the same accident, *held* to have assumed the risk of injury from being thrown from the car by the sudden application of the air brakes.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Glen Hartwick against the Chicago & Alton Railroad Company. Judgment on a directed verdict for defendant, and plaintiff brings error. Affirmed.

H. H. Patterson, of Chicago, Ill., for plaintiff in error.

C. E. Pope, of East St. Louis, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This writ of error is prosecuted to review the court's action in directing a verdict against plaintiff at the close of the testimony. After a careful reading of all the evidence, we are convinced that a jury question was presented on all issues of fact, save assumption of risk. The following statement of fact will therefore be made with this premise as its background:

[1] Plaintiff, when injured, was employed by defendant company in interstate commerce, and his contributory negligence, if any, was therefore not a complete bar to his recovery. Section 3, Employers' Liability Act (Comp. St. § 8659). His assumption of risk, however, if established, was a defense. Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; Chesapeake & Ohio Ry. v. De Atley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016.

In examining the evidence bearing on this issue, we have not attempted to weigh it, nor the inferences deducible therefrom. but to ascertain whether any evidence consistent with the conceded physical facts appears that required the court to submit this issue to the jury. There is little or no dispute in much of the story.

Plaintiff was employed on defendant's gravel train, unloading and distributing gravel along the main line at Whitehall, Ill. Some of the crew worked in the cars; others on the ground. A switching crew (consisting of conductor, engineer, fireman, and two brakemen) was at hand, and occasionally the unloading was facilitated by the engine bumping the car and loosening the gravel. As the unloading of the cars progressed, the train was moved slowly, thus permitting a more uniform and convenient distribution. As other trains passed, the gravel train was taken to a side track and returned as soon as possible.

On the day of the accident, an approaching freight train made it necessary for the switching crew to take the gravel train to a side track. Plaintiff, along with some 15 other employees, remained on one of the gravel cars and was taken to the side track and returned. As the car upon which he was riding was stopped, preparatory to its being unloaded, he fell off and suffered injuries, for which this action is brought. Plaintiff asserts his fall was due to the brakeman's failure to give warning of the impending car movement. The engi-

neer, it seems, applied the air, and the plaintiff, unaware that the brakes were to be set, lost his balance, and fell over backwards.

The car upon which plaintiff was riding was a hopper steel car, with the gravel loaded to within 2 feet of the top. There were some 15 or 16 men on this car, each with a pick or shovel. The train was backed down to the main track, at a rate variously estimated from 4 to 10 miles per hour. The brakeman cut the gravel train, so that the empties would proceed farther north, while the loaded cars were stopped at the unloading place. The car upon which the crew was riding was the first loaded car, and the cut in the train occurred between it and the preceding empty car. When the brakeman pulled the coupling pin, he released the empty cars, and when the engineer applied the air, only the loaded cars were affected. It was the sudden slackening of the speed of the loaded cars that caused plaintiff to fall. Plaintiff's witnesses described the stop as "a sudden, jerky stop." One of his witnesses said:

"I would not say—I do not mean to say—that the stopping of the train was violent. It stopped sudden enough. It ran about 25 feet, and was going between 5 and 7 miles per hour when the brakes were applied."

Concerning plaintiff's position on the car, the testimony is not so free from doubt. Plaintiff produced two witnesses besides himself. The first witness testified:

"Q. Where did you say Hardwick was sitting? A. At the north end of the first loaded car.

"Q. Describe to the jury just his position when you saw him. A. He was sitting on the car, with his feet inside of the car, on the inside of the car, sitting in this position on the car (indicating).

"Q. Where was his right hand? A. On the car ahead of him.

"Q. Leaning over on the car ahead of him? A. Yes, sir.

"Q. And when the cars separated, he just fell down. Is that it? A. Yes, sir."

Plaintiff's second witness testified that plaintiff was "against the end of the car, sitting or leaning against the end of the car." Plaintiff testified:

"Q. When you got up near the place where you had been unloading, in what position were you on the car? A. I was just about half leaning and half sitting.

"Q. Where were your feet? A. On the gravel.

"Q. About how far was it from the top of the hopper car down to the gravel? A. About 2 feet. My feet were about a foot from the end of the car. In my right hand I held my shovel, and with the other hand I had hold of the end of the car."

Two witnesses testified for the defendant, both of whom were riding in the same car with plaintiff. They said plaintiff—

"was sitting on the north end of the car, sitting on the end of it, with his hand out on the end of the car, on the car that was north of him."

It thus appears that three witnesses, all fellow employees of the plaintiff, one testifying for the plaintiff and two for the defendant, described plaintiff's position as being seated upon the end and top of this car, facing an opposite direction to that taken by the moving car, with one arm extended backward, so that his hand rested upon the

car in front. Plaintiff's other witness testified as heretofore related, but admitted making a written statement to the effect that he could not say plaintiff was not resting one arm on the car in front. Against this testimony is the statement of the plaintiff.

[2, 3] It must, we think, be apparent that plaintiff was not seated upon the gravel with his back against the end of the car. Otherwise, he would not have turned a back somersault over the end. But rejecting part of the plaintiff's story as contrary to the physical facts does not require us to reject all of his story; and he is, of course, entitled to have this jury question determined, not by the weight of testimony, but by the presence of any evidence that would support a verdict in his favor. We are therefore presented with a very narrow question.

Accepting plaintiff's story, not conclusively refuted by the physical facts, can he be excused for taking his position on the car?

A brakeman may not necessarily assume the risk of a sudden movement of the cars, induced by the engineer's careless operation of the engine, if he be on the top of a box car. But, if he were standing on the brake at one end of a·moving car, he would assume the risk in case of accident due to such sudden and unexpected movement of the train. Likewise, if a brakeman on the ground attempted to board a train which the engineer was moving at an unnecessary speed (say 30 miles per hour), the brakeman, in case of injury, might well say the issue of assumption of risk was one for the jury. But, if the excessive speed was 60 miles per hour, the court would say as a matter of law that the brakeman assumed the risk in attempting to board the train. C. & O. Ry. v. De Atley, 241 U. S. 310, 314, 36 Sup. Ct. 564, 60 L. Ed. 1016.

It may be difficult in certain cases—in fact, impossible—to draw any clear line separating contributory negligence from assumed risk. In fact, assumption of risk may rest upon the very facts that establish contributory negligence. Some courts and some writers have never attempted to distinguish the two defenses. 18 R. C. L. 675. However, under the federal Employers' Liability Act, federal courts must, in view of the decisions heretofore cited, recognize the distinction, and, in directing a verdict for the master, find sole support therefor in the facts that show the servant's assumption of risk.

The fact that contributory negligence is here a jury question (on the theory of comparative negligence of both parties) should not obscure the fact that the evidence in this case showed plaintiff was guilty of contributory negligence as a matter of law. We are therefore not dealing with a case of assumed risk, where plaintiff's contributory negligence is a disputed issue, but rather with a case where contributory negligence is conclusively shown, but because of the statute is not a complete bar to a recovery.

[4] The real test which we must apply is this: Did the plaintiff seat himself in the position disclosed by the evidence, with knowledge and appreciation of the perils incident to his so riding upon the car? We cannot see in this action of the plaintiff, in thus taking the position of peril and real and known danger, anything but a case of as-

sumed risk. Any sudden increase or change of speed, due to the application of the brakes or to any other cause that might be suggested, would have subjected him to the same accident, and perhaps to similar injury.

The judgment is affirmed.