RISK *v.* PERE MARQUETTE RAILWAY CO.

1. MASTER AND SERVANT—NEGLIGENCE—FEDERAL EMPLOYERS' LIABILITY ACT—SAFE PLACE TO WORK.

Where a workman engaged with others in ballasting a railroad track, on his way home after his day's work, fell off the handcar provided by the company for the use of the men and was killed, the company was not liable there-

[1]Master and Servant, 39 C. J. § 501.

for, under the Federal employers' liability act, on the theory that it failed to provide a safe place to work, in the absence of any claim that the car, which was of the kind in ordinary use, was improperly constructed, that the speed was excessive, that the rails or roadbed were defective, or that deceased was jostled or pushed off the car by any of his coemployees.

2. SAME — DEFENSE OF ASSUMPTION OF RISK AVAILABLE UNDER FEDERAL EMPLOYERS' LIABILITY ACT.

The employee assumed the obvious risks incident to the use of the handcar, as matter of law, and where the accident apparently was caused by his missing the handle while helping to pump the car, the company is not liable; said defense being available under the Federal employers' liability act.

Error to Muskegon; Vanderwerp (John), J.    Submitted April 24, 1928.    (Docket No. 123.)    Decided June 4, 1928.

Case by Stanley J. Risk, administrator of the estate of Toribio Zambrano, deceased, against the Pere Marquette Railway Company for the alleged negligent killing of plaintiff's decedent.    Judgment for defendant *non obstante veredicto.*    Plaintiff brings error.    Affirmed.

*Alexander Sutherland,* for appellant.

*W. K. Williams* and *John C. Shields (Cross, Foote & Sessions,* of counsel), for appellee.

This action is brought under the Federal employers' liability act to recover damages occasioned by the accidental death of deceased, a Mexican a little over 20 years old, who was in the employ of defendant, engaged with some 17 others in reballasting and maintaining a track used by defendant in interstate commerce. The men in the gang were provided with bunk cars where they lived and where their meals were furnished.

[2]Master and Servant, 39 C. J. § 911; 47 L. R. A. (N. S.) 62; L. R. A. 1915C, 69; 12 A. L. R. 693; 36 A. L. R. 918; 18 R. C. L. 830; 3 R. C. L. Supp. 856; 4 R. C. L. Supp. 1212; 5 R. C. L. Supp. 1004; 6 R. C. L. Supp. 1089; 7 R. C. L. Supp. 610.

They traveled to and from their place of employment on two handcars of the ordinary type. On April 25, 1927, after the day's work was over, they started for the bunk car. The boss and six workmen went on the first car, deceased and ten others on the second car. Deceased started to get on the back end but there were four workmen on the back handle and a friend suggested to go to the forward handle where there were two; this he did, facing backwards and pumping the car with the others. The car was going about five or six miles an hour. The only witness called by plaintiff who testified to the manner of the accident said:

"There is a grade there—down hill, I mean—and apparently—I couldn't see any cause; he simply raised his hand up and hollered and fell on the track, that is all. He was standing in front riding backwards."

While the only witness called by defendant who described the manner of the accident thus described it on cross-examination:

"*Q.* What did you see him do? You do like he did. You are on the front and pumping.

"*A.* He was on the front in the middle, in the center. He had his hand like this pumping. Maybe he had his hand loose, I don't know how he happened to fall off.

"*Q.* What did you see?

"*A.* I saw him fall off like this and he hollered at the same time; he yelled.

"*Q.* He was pumping like this?

"*A.* Yes.

"*Q.* And all at once you see him go like that?

"*A.* He missed the handle and he fell over on the track. I don't know whether it was up or down. He missed the handle and fell off. That is the way he fell off.

"*Q.* He fell off because he missed the handle?

"*A.* Yes, if he didn't miss the handle, he wouldn't fall off.

"*Q.* He went right over backwards?

"*A.* Backwards."

Plaintiff's declaration counted generally on defendant's duty to provide a safe place and specifically on the overcrowding of the handcar.    Defendant's motion for a directed verdict, based on two grounds, *i. e.* (1) failure to establish actionable negligence, and (2) assumption of risk, was reserved under the Empson act and a verdict rendered for plaintiff .for $4,000. Judgment for defendant notwithstanding this verdict was entered, and plaintiff prosecutes this writ of error.

FELLOWS, J. (*after stating the facts*).    The trial judge properly entered judgment for defendant *non obstante veredicto*.    Defendant's counsel were right in both· contentions.    In the recent case of *Howe* v. *Railroad Co.*, 236 Mich. 577, an action brought under the Federal act, Mr. Justice SNOW exhaustively reviewed the authorities, particularly the Federal ones, dealing with the questions of negligence and assumption of risk.    This renders it unnecessary to duplicate that work.    Attention will be challenged, however, to a few cases which are somewhat in point.

The handcar was the kind in ordinary use on railroads; there is no claim that it was improperly constructed, or that the speed of five or six miles an hour was excessive; no claim of defective rails or roadbed; deceased was not jostled or pushed off the car by any of his coemployees.    If the car was overcrowded such fact could not on this record by any stretch be deemed the proximate cause of the accident.    There are dangers in railroading, but the defense of assumed risk is available to the carriers under the Federal act, and the employee assumes the obvious risks incident to the occupation.    In *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492 (34 Sup. Ct. 635, L. R. A. 1915C, 1), the court in pointing out the distinction between contributory negligence and assumed risk said:

"On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee.   The risks may be present, notwithstanding the exercise of all reasonable care on his part.   Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty.   Such dangers as are normally and necessarily incident to the occupation are presumably taken into account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not."

In *Morey* v. *Railroad Co.*, 125 Me. 272 (133 Atl. 92), it was said:

"Nor does the fact that the work performed is dangerous, or is performed in a dangerous place, and injury results, necessarily show negligence.   Dangerous work must be performed; and work must be done in dangerous places; and when a workman makes a contract to do such work or to work in a dangerous place, he contracts with reference to that danger and assumes the 'open and obvious risks incident to the work,' or as sometimes expressed, 'such dangers as are normally and necessarily incident to the occupation.'   This is a contractual assumption of risk."

In *Owens* v. *Railroad Co.*, 32 Utah, 208 (89 Pac. 825), the handcar was not provided with a brake and a scantling was used for that purpose.   In going down grade the scantling was jerked from the hand of the employee and fell in front of the car resulting in its being derailed with resultant injury to plaintiff. It was held that plaintiff could not recover, the court saying:

"There was nothing about the situation as thus presented which was not perfectly open and obvious to all the workmen.   The risks and dangers, such as they were, were incident to the manner of conducting their work, and were a part of the ordinary risks of their employment assumed by them."

In *Hartwick* v. *Railroad Co.*, 286 Fed. 672, it was said:

"The real test which we must apply is this: Did the plaintiff seat himself in the position disclosed by the evidence, with knowledge and appreciation of the perils incident to his so riding upon the car? We cannot see in this action of the plaintiff, in thus taking the position of peril and real and known danger, anything but a case of assumed risk."

See, also, *Sims* v. *Railway Co.*, 196 Mich. 114; *Kalivas* v. *Railway Co.*, 96 Wash. 309 (165 Pac. 96); *McGrath* v. *Railroad Co.*, 14 R. I. 357; *Mize* v. *Railroad Co.*, 127 Ky. 496 (105 S. W. 908, 16 L. R. A. [N. S.] 1084).

The judgment will be affirmed.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred. POTTER, J., did not sit.