MARKUS HAESLEY, Administrator, *vs.* WINONA & ST. PETER RAIL-
ROAD COMPANY.

May 26, 1891.

**Railway—Injury to Child Playing about Cars on "Gravity" Side
Track—Duty of Company.**—A railway company, maintaining what
is known as a "gravity" yard or side track, has undoubtedly performed
its duty as to a trespassing child of tender years strictly *non sui juris*
when it securely fastens, by means of the ordinary appliance or brake,
such cars as it may have occasion to place upon the grade of its track.

Appeal by plaintiff, as administrator of his son, William Haesley,
(a child six years and four months old at the time of his death,) from
an order of the district court for Winona county, *Start*, J., presiding,
setting aside a verdict of $1,000 in his favor, and granting a new
trial, in an action to recover $5,000 for alleged negligence of defend-
ant causing the death of his intestate.

*Berry & Moray* and *Gale & Brown*, for appellant.

*Wilson & Bowers*, for respondent.

COLLINS, J. This was an action to recover damages from defend-
ant corporation for personal injuries resulting in the death of plain-
tiff's intestate, said to have been caused by defendant's negligence.
A verdict was had for plaintiff, and the appeal is from an order set-
ting it aside upon the ground that the evidence failed to establish
such negligence. As concisely as possible, we will state the facts,
about which there was practically no controversy. The plaintiff,
with his family, resided but a few blocks from the scene of the acci-
dent in the city of Winona. The deceased was his son, aged about
six years. The defendant owned and operated a switch track, lead-
ing southerly from its main line of railway, 2,234 feet, to a manu-
facturing establishment, and there connecting with the switch track
of another company. It was constructed in the year 1883, and it
had been the common practice of the defendant to use it as a yard
for temporarily storing cars, standing them, with brakes set in the
usual manner, at all points along the track. For 400 feet southerly
from the main line the switch track descended at the rate of 100 feet

to the mile, and from there on it was upon a level, making what is called by railroad men a "gravity" yard, something quite desirable, in their opinion, as it measurably saves the handling of cars by a locomotive.    The plaintiff made no claim upon the trial that defendant was negligent in constructing or maintaining its side track in this manner.    The track ran along an open common much frequented by boys as a playground, and it was shown by the testimony that they would often mount cars standing upon this incline of 400 feet, unloosen the brakes, and ride as far as the cars would run.    When the cars were on the level, some would push them back and forth, while others rode.    It was also shown that trainmen in defendant's employ had frequently seen boys engaged in this kind of amusement, when trains were passing, and had motioned and shouted to them to desist.    No accident had previously occurred, however.

On the day in question the defendant had placed one car upon the level at the foot of the incline, and two about a rod distant up the grade, the brakes being firmly set, as will hereafter appear.    In the afternoon, in company with three boys older than himself, Willie Haesley, plaintiff's son, went over in the vicinity of the side track, his parents having no knowledge of his going, and, so far as was known, he had never gone there before.    It is evident that he was not of sufficient age or discretion to be charged with contributory negligence, and the negligence of his parents on this occasion was a proper question for the jury.    One of his comrades (Richards) was 15 years of age, Fort was aged 11, and the third somewhat younger. While Haesley remained on the ground near the single car, the others climbed upon the two standing up the grade a rod distant, Fort upon the car nearest to Haesley, and Richards on the one above. Haesley then said if they would loosen the brakes he would couple the cars as they came to the one near which he stood.    Fort did his utmost to release the brake, but was unsuccessful, and Richards came to his assistance.    By united effort—Richards kicking the ratchet, which was set fast in the wheel—they finally unloosened one brake, the cars descended by their own weight to the stationary one, catching young Haesley, who evidently was attempting to make the coupling, in such a manner as to cause his death almost immediately.

As was remarked by the trial court when making the order appealed from, assuming that there was evidence in the case sufficient to warrant the jury in finding that the cars, as left by the defendant, were dangerous, naturally alluring and attractive to children of tender years, and also that defendant knew or had reason to believe that, when so left, young children would be attracted to play upon them, and further, if they did, they would or might be injured, the plaintiff, to recover, was obliged to establish the proposition that defendant, when so leaving these cars upon this particular side track, at the place and in the manner in which they were left, was guilty of negligence. It has been noticed, undoubtedly, that the brakes upon these cars were firmly set. It required the united strength of two boys, one 15 and the other 11 years of age, to release one of the brakes, so that the cars were set in motion; and until this was accomplished they were no more dangerous than they would have been upon the horizontal surface of the track. The negligent act complained of by appellant's counsel, and upon which he is forced to rely, is necessarily reduced to defendant's act of placing and leaving its cars on that part of its side track which inclined to such an extent that when the wheels were relieved of the brake pressure, they descended by force of gravitation until stopped by the stationary car. It is therefore contended by appellant that it was the duty of defendant—the duty which it owed to plaintiff's intestate, at least—to place and stand its dangerous, alluring, and attractive cars below the incline, at a point where, when the brakes were unfastened, propulsion by gravitation would have been impossible. He insists that defendant had not performed its duty towards a child of tender years when, by the usual and ordinary means, it so securely locked the car-wheels that the joint efforts of two boys, both of whom had reached years of judgment and discretion, were demanded in order to release the brakes and set the cars in motion.

In the earliest of the so-called "Turn-Table Cases" in this state, (*Keffe* v. *Mil. & St. Paul Ry. Co.*, 21 Minn. 207,) it was aptly said that a railway company is not required to make its land a safe play-ground for children, nor was it an insurer of the lives or limbs of young children who play about its premises. When, however, it sets

before such children a temptation which it has reason to believe will lead them into danger, it must use reasonable care to protect them from the danger to which they are exposed. In subsequent cases of the same nature the rule last mentioned has been sanctioned, although in one instance limited in its application. *Twist* v. *Winona & St. Peter R. Co.*, 39 Minn. 164, (39 N. W. Rep. 402;) *O'Malley* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 289, (45 N. W. Rep. 440.) But nothing more than ordinary or reasonable care is required of persons who have placed upon their own premises such dangerous machinery as turn-tables, attractive, alluring, and open to children of tender years, strictly *non sui juris*. *Kolsti* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 133, (19 N. W. Rep. 655.) It is the doctrine of these cases which is invoked by the appellant in the consideration of his appeal, and by which he asks that defendant's liability for this unfortunate occurrence be determined. Proceeding, then, upon the assumption that the rules which have been established in the Turn-Table Cases are applicable in actions arising out of accidents of a somewhat different character, as was that now before us, the question is simply whether the defendant railway company exercised reasonable care as to children of tender years when leaving its cars, with their brakes firmly set, upon the grade of the side track, a few feet distant from a level surface upon which its track ran for several hundred feet. To answer this query in the negative we must hold that it was the duty of the company to provide something more than the ordinary mode of locking its cars when placed at any point on the incline, or that it was its duty to exercise police supervision over its cars when on this particular part of the track, adequate to the danger to be apprehended,—that is, such a supervision as would keep trespassing adults and children able to release a brake off from the same; or that, as to some uses for which a side track is specially maintained, not only 400 feet of this, but a part of every other side track in the land similarly built and situated, must be surrendered and abandoned, in order that they may not prove dangerous, alluring, and attractive to children who have not yet arrived at years of judgment and discretion, but who are old enough to seek out railway cars as proper objects with which to amuse themselves. But if either of these things

were demanded of defendant a most serious burden would be imposed, a very unreasonable thing, in fact; and in the exercise of ordinary care nothing unreasonable is required. To be sure, the defendant could have placed its cars upon the level portion of its side track, although from the testimony it is obvious that precisely this form of accident might have resulted had it done so. Again, it might have stored its cars, when not in use, upon a side track in the country, remote from habitations, and thus have avoided the danger; but no such vigilance is required. We are of the opinion, to say the least, that when the defendant left its cars with the brakes fastened in the manner indicated by the undisputed testimony its duty was performed towards plaintiff's intestate.

Order affirmed.