## CHRISTIANSEN v. LOS ANGELES & S. L. R. CO.

No. 4855. Decided September 23, 1930. (291 P. 926.)

86

*Geo. H. Smith, J. V. Lyle, R. B. Porter,* and *W. Hal. Farr,* all of Salt Lake City, for appellant.

*H. C. Allen* and *C. M. Beck,* both of Salt Lake City, for respondent.

FOLLAND, J.

This action is one for damages for loss of a leg suffered by plaintiff in being thrown from a moving box car in de-

fendant's railroad yard in Eureka, Utah, May 14, 1925, while attempting to rescue his minor son from a dangerous situation on the moving car. From a verdict and judgment for plaintiff, the defendant appeals.

The only assignment of error argued by appellant is that the trial court erred in denying its motion for a directed verdict, for the reasons that: (1) The evidence fails to show any negligence on the part of defendant, and (2) that plaintiff's child was a trespasser to whom no duty was owing by defendant, and hence no duty could be owing to the father in the rescue of his child. It is conceded that plaintiff is entitled to recover if defendant was negligent and owed a duty to the child, under the rule that injury to a rescuing party, unless he acted under circumstances of great rashness, should be attributed to a defendant if it is shown that defendant negligently exposed to danger the person who required assistance, and owed the duty of due care to such person. 3 Elliott, Railroads (3d Ed.) 909.

The circumstances of the accident are these: The defendant railroad company maintains a depot at Eureka adjoining the main street of the town. Its main line track is located 30 or 40 feet from the main street with no fence or other obstruction between the track and the street. A short distance from the main line track is a switch track ending west of the station house upon which freight cars are frequently left for loading or unloading. Beyond the switch track are located some residences on the hill with retaining walls between the houses and the railroad yard. Between the tracks and the street are a blacksmith shop and other buildings, while on the other side of the street are occupied dwelling houses. Eureka is a mining camp situated in a canyon partially surrounded by hills. The railroad yard is not large in extent and slopes to the west. The tracks end just west of the station house and incline sharply toward the west. The railroad premises being open and accessible from the street were used by the public in passing from main street to points beyond, by children going to and com-

ing from school, and as a place for play. The children played in the yards and upon the cars. Persons living in the houses on the hill went across the tracks in making a short cut to Main street.

The accident occurred about 1 o'clock in the afternoon of May 14, 1925. On that morning a fruit box car, partially loaded with freight was set out on the switch track near the station house where it remained until the happening of the accident. Lynn Christiansen, a boy of five years, was sent by his mother to the store located near the railroad station for some article. The boy did not return promptly. His mother called to plaintiff, who after working night shift had been in bed and had just arisen, to go and look for the child. Plaintiff went outside his home, which was located on Main street, and saw the child on top of the fruit car in the railroad yard. The car was then moving downgrade with increasing velocity toward some gravel cars about 200 feet away. Plaintiff ran across the yards, climbed on the car, reached the child, and threw him off the car to a place of safety, and immediately thereafter the car collided with the standing gravel cars. Plaintiff was thrown from the car to the ground into a pile of rocks. He suffered compound comminuted fractures of the bones of the leg. So badly was he injured that the leg had to be amputated above the knee.

The specific allegations in the complaint are that the company carelessly and negligently failed to securely fasten or brake the car to prevent it running downgrade, well knowing that there was great and imminent danger and likelihood of children playing in the yard and in and about the car, who might be injured by a moving car running away downgrade and becoming derailed or colliding with other cars; that for many years it had been the custom and habit of children to play in and about the tracks and yard and especially in and upon and around the railroad box cars stored or parked in the yard, without objection and with full knowledge, consent, and acquiescence of the defendant;

that the box cars parked in the manner described were alluring, attractive, and tempting to children of immature age, and especially to the children playing in and about the railroad yard.

The evidence on these issues was in dispute, but for the purpose of passing on defendant's motion for a directed verdict, the evidence must be considered and applied most favorable to plaintiff's cause of action. *Groesbeck* v. *Lake Side Printing Co.*, 55 Utah 335, 186 P. 103. Plaintiff's evidence must be taken as true and every legitimate inference drawn in its favor. *Maberto* v. *Wolfe* (Cal. App.) 289 P. 218. That the car was set or parked on an inclining grade is not disputed. There is ample evidence in the record which, if believed, would establish the plaintiff's theory, that is, that car was left on the grade without application of the hand brakes and no blocks placed under the wheels; that it was held merely by the air brakes, which by gradual leakage of air relased the brakes so that the car started by reason of the slight jar or motion of a child climbing or moving thereon and ran away down the grade.

One of plaintiff's witnesses said he saw the car set out on the switch track at 7:30 a. m., and that the train crew left without any one going upon the car to set the hand brake. There was no evidence that the car was blocked by placing a piece of wood or other material under the wheels, although it was the custom to do so. No blocks or boards were found in the vicinity. The defendant produced a witness, one of its employees, who said he saw the car set at about 9:45 a. m. and that a member of the switch crew set the hand brake. While four witnesses saw the Christiansen boy upon the car, no one saw him tamper with the brake. Other children were seen to leave the car immediately before the Christiansen child went upon it. Defendant's witness Hogan told of a demonstration made next morning of the car involved in the accident. He said: "We put the car as near as we could tell in the exact spot where it set when it rolled away and we set the hand brakes up and

then we released it immediately and the car started to roll off." He also described in some detail the braking apparatus and the ratchet which holds it and was then asked:

"Q. Now how easily could that ratchet be released? A. It could be released by the kick of one's foot.

"Q. Would you say that a small child could have released it by giving it a kick? A. It would be possible if that child had a hammer or club or something to hit it with. They are made for that purpose so they will release, or if it were not so, the brakeman would have to carry a hammer to release it with."

It is fairly inferable from the evidence considered most favorably to plaintiff's cause of action that the car started on its journey without any tampering with the brakes by the child and merely from the jarring or motion caused by the child climbing on the car. Assuming that the case was one for the jury, it was clearly competent for the jury to say that the car was left on the grade without setting the hand brake or without blocking the wheels. The evidence was sufficient to support such a conclusion. It was also for the jury to find whether in view of all the circumstances the placing and leaving of the car thus improperly and imperfectly secured against running away on the grade was in the exercise of reasonable care. Had a car thus imperfectly secured ran away and crossed a public street without warning, thereby injuring a person rightfully on the crossing, and who was not guilty of contributory negligence, could not a jury rightfully find such failure to secure the car an act of negligence on the part of the defendant? If the undisputed evidence should show that the box car had been blocked and hand brakes applied and that they had been released or removed by the child or others than employees of the company, then we might say as a matter of law that the company had discharged its full duty in this respect and could not be held for negligence. *Haesley* v. *Winona & St. P. R. Co.*, 46 Minn. 233, 48 N. W. 1023, 24 Am. St. Rep. 220. The same result might be reached if the car was merely standing in the yard and the child had fallen from it and suffered injury. *Smith*

v. *Hines,* 212 Ky. 30, 278 S. W. 142, 45 A. L. R. 980. Here, however, the negligence alleged is not merely the keeping of a standing car in defendant's railroad yards, but in leaving such a car unbraked and unblocked upon a grade where it might start, without notice or warning, either by itself or upon slight movement of one boarding it and thereby proceed downgrade upon a mission of destruction. Witnesses for defendant testified that the air brakes could not hold the car in place on the inclined grade very long—just how long a time it would do so they could not say.

It is fairly clear that the only reasonable safe method of securely leaving the car in such a place would be to apply the hand brake or place blocks under the wheels or do both. To leave the car at such a place to be held only by the air brakes, with the air necessarily dissipating itself ■ causing loss of pressure, was in the nature of setting a trap which would spring at the moment one set foot thereon. Here the car started on its journey immediately after a small child went upon it. This was a concealed danger which was known, or by the exercise of reasonable care could have been known, by the defendant, and which could not have been known or appreciated by the boy. *Smith* v. *Atchison, T. & S. F. Ry. Co.,* 25 Kan. 515, is a case where a two year old child strayed from its home nearby onto a railroad track and was injured. The second headnote summarizes the decision as follows:

"Where a railroad track is constructed in a populous neighborhood, near a city, and children and others often go upon the track, and a portion of the track has a steep grade down which cars will run with great force when the brakes are loosened, and the persons operating the road loosen the brakes of a car loaded with coal, and let it run down this steep grade, without any person being on the car, or without any means of stopping it, and without first looking to see whether the track was clear or whether any person was on the track or not, and a child who was on the track was run over and injured, and there is a conflict in the evidence as to whether the child could have been seen by the persons operating the road before they loosened the brakes, held, that the courts cannot say, as a matter of law,

that the persons operating the road were not guilty of negligence; but it is a question of fact, which should be submitted to the jury."

Appellant cites *Ollis* v. *Houston, E. W. & T. Ry. Co.,* 31 Tex. Civ. App. 601, 73 S. W. 30, 31, and quotes therefrom:

"The cases make a distinction between mere passive negligence and liability therefor arising out of a condition and active negligence in doing a present act without the exercise of due care."

This apparently upon the theory that the present case comes within the statement of "passive negligence and liability therefor arising out of a condition." The case is also cited and relied upon by respondent. There, the plaintiff, a child of six years, was playing with other children upon a car in defendant's yards when defendant caused another car to be run into the yard and struck the car upon which plaintiff was playing, and plaintiff was thrown off and suffered injury. It was alleged that the switchyard was located in a thickly settled and populous neighborhood, and that children had habitually, constantly, and notoriously made it their playground, and played in the yard and in and about the cars, with the knowledge of and without objection from the defendant and its employees. It was held that under these facts—though the case did not come within the doctrine of the turntable cases—that it was the duty of the defendant to use ordinary care to discover the presence of the children, and to avoid inflicting injury upon them. This is substantially the same rule as announced by this court in the cases hereafter cited. There, the negligence was in shunting another car against the one the children were playing upon. In the instant case the negligence was active negligence, though the act of setting the car occurred a few hours earlier, because of placing the car on a grade without properly securing it by brakes or blocks and secured only by the air brake, which was constantly losing its braking power by mere lapse of time. The injury was proximately

caused by the active negligence of defendant in thus setting the car and was not attributable merely to a condition.

What difference does it make whether the car is moved by a locomotive shunting another car against it or by reason of the air of the air brake being dissipated and starting it downgrade, when the defendant's employees should have used blocks or hand brakes to make its position reasonably secure on the track?

The jury might well find, as it did, that there was a failure on defendant's part to exercise due care in the placing of the car. This would entitle plaintiff to recover if there was a duty owing by the company to the child to exercise due care with respect to it. Unless the defendant owed such a duty, the question of negligence is not reached. Negligence can only be predicated upon a failure to use the degree of care required of one by the law in the discharge of a duty imposed thereby. If there is no duty there is no negligence.

Did the defendant owe a duty to the Christiansen child to exercise due care in its behalf? It is clearly shown by the evidence that the railroad yard was a haunt or playground where children were accustomed to congregate and play, and not only that, but the children were accustomed to play in, about, and on the cars left in the yard. This condition had continued for about thirty years. Defendant had knowledge of this fact. It was testified by some of the adult witnesses who, as children, played around the tracks and cars, that they never had been ordered off the railroad property, and that in later years, while living immediately adjacent to the tracks and cars and seeing children frequently playing thereon, they had never seen or heard any employee of defendant company order the children off the premises. Defendant's employees also testified to the fact that children frequented the railroad yard except they minimized the extent to which the grounds were used as a playground and said they ordered the children

away when discovered. It was for the jury to determine the truth of the situation.

Respondent does not rest his case upon the "Attractive Nuisance Theory." It is not contended that the standing box car in defendant's yard was an attraction which lured the child into the yard and upon the car. It is well settled that an ordinary freight car does not come within the class of instrumentalities that may be designated as attractive nuisances. *Smalley* v. *Railroad,* 34 Utah 423, 98 P. 311, 319; *Bogdon* v. *Los Angeles & S. L. R. Co.,* 59 Utah 505, 205 P. 571. The factor which it is claimed imposes a duty upon the defendant under the circumstances shown in the evidence is that the presence of children in the yard and on or about the cars is to be anticipated. In his brief respondent says:

"The railroad Co. is charged with knowledge that without objection on its part, the children of that community have made a playground of its tracks and cars for more than 30 years, and having this knowledge it is therefore charged with the duty of using reasonable care and diligence to avoid injury to the children so playing about the yard and cars. This proposition is exactly similar to the duty imposed upon the railroad when it knows that any portion of its right of way is used by the people of the community as a thoroughfare and has been so used, without objection for a long period of time."

The attractive nuisance or turntable doctrine "is founded upon the principle that when one sets a temptation before young children under circumstances which in law is equivalent, to the holding out of an inducement to enter, he must use ordinary care to protect them from harm. It is but applying the general rule that, when one induces or invites another upon his premises, he must use ordinary care to avoid injuring him." *Smalley* v. *Railroad,* supra. Here there was no such attractive and dangerous instrumentality left exposed as amounted to a temptation or invitation to children under the attractive nuisance doctrine, but the place where the car was left inadequately braked was a haunt or playground where children were

accustomed to congregate and play, and this fact imposed the duty upon the company to exercise reasonable care to securely brake or block its cars when left in such a place so as to prevent injury to children playing on or about them. When a person maintains premises which are habitually used as a playground by children with his knowledge and tacit consent, he will be charged with the duty of reasonably anticipating that they may be injured by an object, such as a freight car, which is not in itself dangerous or attractive or enticing to children, but which may be dangerous because of the condition in which it is placed and left upon an inclined plane. *Campbell* v. *Model Steam Laundry*, 190 N. C. 649, 130 S. E. 638; *Erickson* v. *Minn., S. P. & S. S. M. R. Co.*, 165 Minn. 106, 205 N. W. 889, 45 A. L. R. 973; *Union Light, Heat & Power Co.* v. *Lunsford*, 189 Ky. 785, 225 S. W. 741.

In *Jensen* v. *Utah Ry. Co.* (Utah) 270 P. 349, 357, a child nearly two years old was injured by a moving train on the railroad track in a town at a point on the right of way where it was alleged, and there was evidence to support the allegation, it had been the long custom and habit of persons, including children, to use the track as a footpath in going up and down and across the track with knowledge of and without objection by the defendant. Mr. Justice Straup, speaking for the court, said:

"Upon the evidence adduced on behalf of the plaintiff, she, in line with the cases heretofore referred to, was entitled to a charge that the train operatives in the vicinity in question were required to anticipate the presence of persons on or along the track in such close proximity thereto as to be in danger of passing trains, and thus were required to observe a reasonable lookout for them and to use reasonable care not to injure them; and in such view and on such theory a charge that plaintiff was on the track without right, or was a trespasser, or on such assumed facts to leave the question to the jury whether she was or was a trespasser to whom no duty was owing until actually discovered in a place of danger, was error. Such holding is not inconsistent with the case of *Palmer* v. *Oregon Short Line R. Co.* [34 Utah 466, 98 P. 689, 16 Ann. Cas. 229], supra, or *Smalley* v. *Rio Grande W. Ry. Co.*, 34 Utah 423, 98 P. 311, for in

such cases the facts are dissimilar, as may readily be perceived by comparing them with the facts in this case."

In the case of *Palmer* v. *Oregon Short Line R. Co.*, 34 Utah 466, 98 P. 689, 702, 16 Ann. Cas. 229, Mr. Justice Frick, though holding against plaintiff on the facts, said:

"That a railroad company owes the active duty of exercising ordinary care not to injure persons who are on or near the track at places in thickly settled portions of cities, towns, and villages where persons have free access to the tracks, and at all other places where the public in any considerable numbers habitually have passed over or along the track for a considerable period of time so as to impart notice of their use of the track to the company, or where the company expressly or impliedly permits persons to pass along or across the track at a particular place or places for a considerable period of time."

In *Jensen* v. *Denver & Rio G. Ry. Co.*, 44 Utah 100, 138 P. 1185, 1189, the court said:

"The deceased was not a trespasser. He was making such a use of the defendant's track and right of way as had others and the public generally for a long time, openly, with the knowledge and acquiescence of the defendant and of its employees operating trains along such place. Train operatives, hence, were required to take notice of such usage, to anticipate the probable presence of persons on or near the track along there, and to observe a reasonable lookout for persons making such a use of the track and timely to warn them of the approach of trains."

The same rule in effect is announced in *Young* v. *Clark*, 16 Utah 42, 50 P. 832; *Corbett* v. *Oregon S. L. R. Co.*, 25 Utah 449, 71 P. 1065; *Teakle* v. *San Pedro, L. A. & S. L. R. Co.*, 32 Utah 276, 90 P. 402, 10 L. R. A. (N. S.) 486.

The rule stated in these Utah cases is applicable where the railroad company is moving cars or doing work in its yard or on tracks at places where the presence of persons may reasonably be anticipated. But here the defendant was not engaged at the time of the accident in moving its cars or doing any work which resulted in injury to plaintiff. If over a considerable period of time children were

in the habit of congregating and playing in defendant's yard and upon its tracks and defendant knew of the custom or was charged with such knowledge, then the law requires it to move its cars with due care with respect to those who may be so playing. It would seem to us the rule should also apply where defendant had left a car on an incline insecurely braked or blocked, at a place where children have habitually played, and defendant knew of such conduct or was charged with such knowledge, and a child is put in jeopardy by its movement where the car is put in motion either by failure of the air brake to hold it in position on the grade, and/or by the weight of a child going upon or running over such car. That the real factor in these cases, having to do with liability of a land occupier to children, rests upon the extent to which the presence of children is to be anticipated, rather than upon their status as technical trespassers, is indicated by the law-writers as well as by judges.

An article entitled "The Turntable Cases in the Federal Courts," by Prof. Manley O. Hudson of the Harvard Law School, in 36 Harvard Law Review, is a careful and scholarly study of these cases with a view of discovering the underlying legal theory of these decisions. Therein it is stated the general theory from which we think the duty of the defendant to the child in the instant case arises, as follows:

"In addition to taking account of the fact of a visitor's infancy in applying the standard of due care, account should be taken of any factor which bears upon the likelihood of the visit. If the landowner has expressly solicited children to come upon his land, due care requires that their visit be anticipated and prepared for, and the premises made safe for them. If children are in the habit of visiting the land, their presence should similarly be anticipated, and some provision may have to be made for their safety. So in *Sioux City & Pac. R. R. Co.* v. *Stout*, 17 Wall. 657, 21 L. Ed. 745, it was very important that children had previously been known to play on the land. This explains the importance of the character of the place where a turntable is kept, its proximity to towns, to highways, and to frequented places. The probability of children's coming on the land is what lends

importance to the so-called 'implied license.' It is interesting to note Mr. Justice Holmes' explanation that *Cooke* v. *Midland Great Western Ry.* was a case in which 'a license was implied,' for instance; this can only mean that children were to be expected, for it would seem that an action of trespass might have been maintained against them. The 'implied license' is of course a fiction. The real factor is the extent to which the presence of children is to be anticipated by the defendant. Hence in Sioux City & Pacific R. Co. v. Stout, since it was shown that other children had previously played on the turntable, it was immaterial that the plaintiff was there for the first time."

In *Hardy* v. *Mo. P. Ry. Co.* (C. C. A.) 266 F. 860, 863, 36 A. L. R. 1, it is said:

"We are therefore concerned solely with the application of that doctrine to the facts in hand. Such application necessitates an understanding of that doctrine and a definition of its essentials. We take the principle of the doctrine to be that children of tender years and immature discretion are not to be deemed as trespassers, if they merely follow childish instincts of curiosity or adventure in a manner and to an extent which should have been anticipated by a reasonably careful person; and a property owner must use reasonable care to protect such children at places upon his property where he should reasonably have anticipated their presence. Such anticipation may be based upon knowledge, actual or legally implied that children do resort to such places, or upon knowledge, actual or legally implied, that such places are attractive to children and within their observation."

In *Ramsay* v. *Tuthill Bldg. Material Co.*, 295 Ill. 395, 129 N. E. 127, 129, 36 A. L. R. 23, it is said:

"There is no implied invitation from the mere existence of a dangerous attraction which is not discoverable off the premises; but, if to the knowledge of the owner children habitually come upon his premises where a dangerous condition exists to which they are exposed, the duty to exercise care for their safety arises, not because of an implied invitation, but because of his knowledge of unconscious exposure to danger which the children do not realize."

*Cahill* v. *E. B. & A. L. Stone & Co.*, 153 Cal. 571, 96 P. 84, 85, 19 L. R. A. (N. S.) 1094, is a case where a street railway company left a loaded push car on its track in a public street. The case was decided on demurrer, but this

was reversed on appeal. The court held a duty was owing to the child under the doctrine of turntable cases and said:

"The car being thus rightfully in the street, the plaintiff had no right to go upon it, or to interfere with in any way, without the consent of the defendants. He would have been with respect to the car technically a trespasser, except for the allegation that children were accustomed to play upon it with the knowledge and consent of the defendants."

Appellant cites the following cases in support of the contention that the Christiansen child was a trespasser to whom the railroad company owed no duty, at least until its presence was discovered: *Ollis* v. *Houston, E. & W. T. Ry. Co.*, 31 Tex. Civ. App. 601, 73 S. W. 30; *Smalley* v. *Railroad*, supra; *Bogdon* v. *Railroad*, supra; *Kaumeier* v. *City Electric Ry Co.*, 116 Mich. 306, 74 N. W. 481, 40 L. R. A. 385, Am. St. Rep. 525; *Underwood* v. *Western & A. R. Co.*, 105 Ga. 48, 31 S. E. 123; *Catlett* v. *St. Louis, etc.*, 57 Ark. 461, 21 S. W. 1062, 38 Am. St. Rep. 254; *Barney* v. *Hannibal & St. J. R. Co.*, 126 Mo. 372, 28 S. W. 1069, 26 L. R. A. 847; *McEachern* v. *Boston & M. R. Co.*, 150 Mass. 515, 23 N. E. 231; *Buddy* v. *Union Terminal Ry. Co.*, 276 Mo. 276, 207 S. W. 821; *Kelly* v. *Benas*, 217 Mo. 1, 116 S. W. 557, 20 L. R. A. (N. S.) 903; *Nixon* v. *Montana, W. & S. Ry. Co.*, 50 Mont. 95, 145 P. 8, Ann. Cas. 1916B, 299; *Ferrari* v. *New York Cent. R. Co.*, 224 App. Div. 182, 230 N. Y. S. 60; *Hojecki* v. *Philadelphia & R. Ry. Co.*, 283 Pa. 444, 129 A. 327, 329; *Chicago & A. R. Co.* v. *McLaughlin*, 47 Ill. 265; *Swartwood's Guardian* v. *Louisville & N. R. Co.*, 129 Ky. 247, 111 S. W. 305, 19 L. R. A. (N. S.) 1112, 130 Am. St. Rep. 465; *Central R. & B. Co.* v. *Rylee*, 87 Ga. 491, 13 S. E. 584, 13 L. R. A. 634.

In *Smalley* v. *R. R.*, supra, it was said that the evidence did not "warrant a finding that the public or the people of the neighborhood had generally or habitually traversed the yard, or that it was otherwise traversed or used by them under the circumstances which would justify a find-

ing that defendant had invited or permitted or acquiesced in such use being made of its premises." It was held also that the injury was not caused by negligence on the part of defendant. The court said:

"Where the public or the people of a neighborhood, though technically unauthorized, have for a considerable length of time generally or habitually traversed railroad premises without objection, there is much reason for holding that the employees of the railroad company are required to take notice of such fact and to regulate their conduct accordingly."

This language is peculiarly applicable to the case at bar. Here the children of the neighborhood habitually, openly, and notoriously used the tracks and cars standing thereon as a playground for a period of years. The employees of defendant are required to take notice of such fact, and in placing cars on the side track at that point are required to regulate their conduct accordingly. They should take into consideration the fact that in all probability during the course of the day on which the car might be standing there children would be in, around, and upon the car or tracks, and it was their duty, in anticipation of the presence of such children, to set the brakes or block the car so as to preclude any reasonable chance of its being started down the incline by the mere escape of air in the air brake.

*Bogden* v. *Los Angeles & S. L. R. Co.*, supra, was tried upon the theory that it was within the turntable doctrine or doctrine of attractive nuisances, but, if not, then the defendant was guilty of negligence within the rule governing the storing of dangerous explosives. In that case a car which had contained a shipment of gunpowder for a mine had been unloaded and the empty car was placed upon the switch track. Some powder had spilled out of the container and remained on the floor of the car. A boy about eight years of age visited the car, found the powder, gathered some of it into a box, and carried it away from the car, and in attempting to explode it was burned and injured by

it. It was held that there was no negligence on the part of the company, and that there could be no finding that the plaintiff was invited, lured, or attracted by anything the defendant did or omitted to do to the car in question, for the reason that the dangerous thing was not known to exist and could not be the means of luring or inviting any one. On the other phase of the case the decision seems to turn upon the fact that the defendant did not knowingly leave the explosive at a place where it was known children had a right to go or where they ordinarily did go. "That not being cognizant of that fact it would not guard against the accident." In the course of the decision Mr. Justice Frick says:

"Although children of tender years are favored by the law, yet, even before one of them can recover for an injury, it must appear that the person causing the injury owed a duty to the injured child, and that he negligently failed to discharge that duty by failing to exercise that degree of care that the law imposed under the circumstances. It goes without saying that one cannot discharge a duty before it is known to exist, and while actual knowledge of its existence is not always necessary, yet the facts must be such that knowledge may be imputed upon the ground that the person charged by the exercise of reasonable care ought to have known, and hence, in contemplation of law, did know. The undisputed facts in this case are not such as will impute knowledge to the defendant."

In the instant case the evidence is that the place was a playground for children and had been for many years, which fact was known to defendant.

In *Kaumeier* v. *City Electric Ry. Co.*, supra, a small flat car was left by defendant in a street. The car had no brakes but was blocked by pieces of wood and stone under the wheels. Children came to the place and removed the blocks and moved the car by pushing it back and forth on the track. Plaintiff climbed on the car to ride, but either slipped or was pushed off, falling under the wheels, causing her injury. The court said she was a trespasser in attempting to get on the car. It was held that defendant was not guilty of negligence; that it had a right to leave the car

where it did, and the car itself was not a dangerous instrumentality; and that this was true even though left without blocking.

The case may be distinguished from the present one in this: That there the car was blocked to prevent its movement on the tracks, and the injury was caused, not by any act or omission on the part of defendant, but by the movement of the car by other children on the tracks. Hence the injury was not proximately caused by any act or omission of the defendant.

*Underwood* v. *W. & A. R. Co.; Catlett* v. *St. Louis etc.;* and *Barney* v. *H. & St. J. R. Co.,* supra, are not strictly in point, as in each case the child was injured while attempting to board a moving freight train, their presence being unknown to the railway employees. It was held the boys were trespassing to whom no duty was owing by the railway company except not to injure them wantonly after knowledge of their presence.

*McEachern* v. *Boston & M. R. Co.,* supra. A boy of eleven was injured by a defective door to a box car when he went to look into the car. The court held he was a trespasser to whom the company owed no duty, notwithstanding the complaint alleged that children were in the habit of playing in, around, and upon the cars left on the side track with appellant's knowledge. Our court in the cases cited has not followed this doctrine.

*Buddy* v. *Union Terminal Ry. Co.,* supra, holds that a standard gauge flat car left unbraked and unblocked, requiring six to eight boys from nine to thirteen years old to move it, is not within the attractive nuisance rule as to a ten year old boy caught between car and adjacent building material. It was held that such a car is not a dangerous instrumentality under the "turntable" rule, and it was not negligence for the company to leave it in its yards. The distinguishing facts here were that the children played upon these cars in spite of defendant's objection, and that the

boy was injured by reason of the movement of the car by other children pushing it.

In *Kelly* v. *Benas,* supra, where a boy was injured in a lumber yard by a pile of lumber slipping and falling on him, it was held he was a trespasser; that defendant did not intentionally injure him; that the lumber pile did not come within the attractive nuisance rule; and that the children did not play in the yard by the defendant's invitation, express or implied.

*Nixon* v. *Montana, W. & S. Ry. Co.,* supra, Plaintiff's daughter eight and one half years of age was killed while attempting to board a moving train at a place where, it was alleged, children were accustomed to walk on the track. It was held that a moving train was not an attractive nuisance and that the presence of children on or near the tracks does not carry with it an invitation to board a moving train; that there is no such invitation because of the attractive character of the moving train nor from toleration by the company from prior attempts of children so to do.

*Ferrari* v. *New York Cent. R. Co.,* supra. A boy of eight years three months climbed upon an overhead bridge of the railway company, and while letting himself down from the structure his foot came in contact with an electric wire maintained by a gas and electric corporation, whereby he suffered injuries from which he died. It was sought to hold both corporations. The court held the railroad company not liable, but affirmed the judgment against the gas and electric corporation upon the theory that under the evidence it was bound to anticipate that children would be likely to venture into proximity of its wires and be injured by them; that with this knowledge it was its duty to keep the wires in a reasonably safe condition. This reasoning seems to support the judgment in the instant case, as from it we conclude that the railway company was bound to anticipate the presence of children and should have parked its car in a reasonably safe condition in view of the danger to children which should have been anticipated.

*Hojecki et al.* v. *Philadelphia & R. Ry. Co.*, supra. Here another boy and the plaintiff, a boy of eight, had been ordered off a freight train about to be moved. The other boy got off, but the train started before the plaintiff got off the car and he fell to his hurt. The brakeman could not signal the engineer because of a curve. This location was not at but near a place where children played. The court held "defendant is not liable to trespassers, except for wanton and willful acts, unless he permits his property to be used as a playground for such length of time as to presuppose an invitation or permission to occupy the premises in this manner.

*Chicago & A. R. Co.* v. *McLaughlin,* supra. A car was left on a track on a public street. A brakeman boarded the car and released the brakes without warning. A boy playing on the car got off the car, but after the brakeman ascended the ladder, apparently got on again and fell and was injured. The court held there was no negligence because the brakeman, not seeing the boy on the car and having no reason to suspect him of being on it, owed no duty to give warning.

*Swartwood's Guardian* v. *Louisville & N. R. Co.*, supra. In this case it was held that there was no duty on the railroad company to maintain a lookout for children who are in the habit of jumping on or off cars when the cars are moving in public streets. This is contra to the so-called intermediate rule followed in *Palmer* v. *Railroad,* 34 Utah 466, 98 P. 689, 16 Ann. Cas. 229.

*Central Ry. Co.* v. *Rylee,* supra. In this case a child was passing under a car attached to a train of cars at a place in the yards where people customarily crossed and was injured by the sudden and involuntary movement of the long line of cars. The court held that even though the company permits persons to cross its tracks when not in use, amounting to an implied license, license will not be implied when the tracks are occupied.

If the facts conclusively showed that the defendant placed its car without properly securing the same on a grade in a place used as a playground for children where the car by a slight touch would start downgrade and thereby injured one on or about the premises, surely no one would say the defendant was free from negligence. Wherein is this case different? Merely in this, that these conditions are not conclusively shown. There is dispute in the evidence with respect to (1) whether the car was left without proper braking; (2) whether this was a playground for children with defendant's knowledge. But the evidence being in conflict it was for the jury to find the facts. The court properly overruled the motion for a directed verdict.

The jury rendered a verdict in plaintiff's favor for $25,000. This was reduced by the trial court to $12,500, and plaintiff required to either accept such amount or suffer a new trial. He accepted the reduction under protest and excepted to the court's order with respect thereto, and asserted he accepted the reduction under compulsion because of inability to finance another trial. He now seeks to have us review the court's order in reducing the judgment. This we may not do for the reason that plaintiff failed to cross-appeal. That question therefore is not before us. Where a respondent desires to modify a judgment in his favor or seeks affirmative relief, he must serve notice of cross-appeal and assign errors in support thereof. *Fowers* v. *Lawson*, 56 Utah 420, 191 P. 227; *Jensen* v. *Utah Railway Co.* (Utah) 270 P. 349.

The judgment is affirmed, with costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.